## VICKSBURG *v.* VICKSBURG WATERWORKS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 275. Argued April 24, 1907.—Decided May 27, 1907.

A decree must be read in the light of the issues involved in the pleadings and the relief sought, and a decree in a suit brought by a water company against a municipality to enjoin it from regulating rates does not finally dispose of the right of the city to regulate rates under a law passed after the contract went into effect and after the bill was filed.

A State may, in matters of proprietary rights, exclude itself and authorize its municipal corporations to exclude themselves, from the right of regulation of such matters as water rates.

In view of the decisions of the highest court of Mississippi a municipality of that State may, under a broad grant of legislative authority conferred without restrictions or conditions, make a contract with a corporation, fixing a maximum rate at which water should be supplied to the inhabi-

tants of the city for a limited period, which in the absence of fraud or convention, will be beyond legislative or municipal power to alter to the prejudice of the other contracting party under the impairment of obligation clause of the Federal Constitution.

CASES involving the rights of the Vicksburg Waterworks Company, under the contract made between the city of Vicksburg and the company, for furnishing the water supply of the city, have been before this court in two preceding actions, viz: *Vicksburg* v. *The Waterworks Company*, 185 U. S. 65; and the *Same* v. *Same*, 202 U. S. 453.

Owing to the previous statements of the case, it is only necessary to set out enough of the facts involved in the controversy now before us to make plain the conclusions at which we arrive.

The city of Vicksburg, by act of the legislature of Mississippi (Laws of 1886, chap. 358, sec. 5, p. 695), was authorized "to provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties, who shall build and operate waterworks."

Acting under this authority conferred by the legislature, the city of Vicksburg made a contract with Samuel R. Bullock & Company, their associates and assigns, for the supply of water to the city and its inhabitants, which was contained in the ordinance of November 18, 1886, section 13 thereof providing that—

"The said Samuel R. Bullock & Company, their associates, successors or assigns, shall have the right to make all needful rules and regulations governing the consumption of water, the tapping of pipes and general operation of the works, and to make such rates and charges for the use of said water as they may determine, provided that such rates and charges shall not exceed 50 cents for each thousand gallons of water."

The ordinance, by its terms, ran for thirty years, and Bullock & Company, as provided in section 5 of the ordinance, assigned the contract to the Vicksburg Water Supply Company,

and it was duly accepted by that company. The supply company put in the works and operated until August, 1900, when the mortgage upon the property, including all the franchises and contract rights, was foreclosed and purchased by a Mr. Crumpler, who assigned all his rights and title to the Vicksburg Waterworks Company, the appellee herein, which company has operated the works since.

The contract contained an agreement to pay a stipulated rental for certain hydrants for public use.

The legislature of Mississippi, on March 18, 1900, passed an act authorizing the city to issue bonds and build a waterworks system of its own for the supply of the city and its inhabitants, and on the third of July, 1900, an election was held in the city under the statute, which resulted in a vote to build or buy a waterworks plant of its own.

The city repudiated any contract relations with the company. Thereupon the company filed its bill in the United States Circuit Court for the District of Mississippi on the fourteenth day of February, 1901, the objects of which were thus stated by Mr. Justice Shiras in delivering the opinion of the court (185 U. S. 65):

"The bill prays for an injunction to restrain the defendant from assuming to abrogate and take away the franchises and contract rights of the complainant, and from attempting to coerce the company to sell its works to the defendant for an inadequate price, and that said act of the legislature of Mississippi, adopted on March 9, 1900, and said resolution and ordinance adopted and passed by said city on the seventh day of November, 1900, be declared to impair the obligations of said contract between said city and said Bullock & Company and their assigns, and to cast a cloud upon the title, franchises and rights of complainant, and said act, ordinance and resolution, and each of them, are alleged to be in contravention of the Constitution of the United States, in this, that they impair the obligations of said contract between said city and said Bullock & Company and their assigns."

In the court of original jurisdiction the bill was dismissed for want of jurisdiction. On the appeal, 185 U. S. 65, the judgment was reversed, and this court held that there was jurisdiction, and the cause was remanded. The case went to trial upon its merits, and on May 18, 1904, a final decree was rendered, which was affirmed on appeal to this court in the case reported in 202 U. S. 453. The decree in that case, known in the record as No. 41, is given in the margin.[1]

---

[1] Equity, No. 41.

Vicksburg Waterworks Company
                                *vs.*                                  }
Mayor and Aldermen of the City of Vicksburg, Mississippi.

This day this cause came to be heard in accordance with the motion of complainant and defendant filed January 12th, 1904, upon the original bill, amended and supplemental bill, exhibits, answer of defendant, proof and exhibits and the court after hearing and attending the evidence and the arguments of counsel and being fully advised in the premises and being satisfied that the complainant is entitled to the relief prayed for in its original and amended and supplemental bills and for full relief; it is thereupon hereby ordered, adjudged and decreed:

*First*, that the defendants, the Mayor and Aldermen of the city of Vicksburg be and are hereby perpetually enjoined from abrogating and taking away, or from assuming to abrogate or take away the franchises or contract rights of complainant under and by virtue of the ordinances, franchises or contract of said defendants entitled, "An ordinance to provide for a supply of water to the city of Vicksburg in Warren county, Mississippi, and to its inhabitants, contracting with Samuel R. Bullock & Company, their associates, successors and assigns for a supply of water for public use and giving the said city of Vicksburg an option to purchase the said works," ordained the 19th day of November, 1886, approved by John W. Powell, Mayor, November 19th, 1886, being the ordinance, contract and franchise marked Exhibit B to the original bill of complaint, and said ordinance, contract and franchise being specifically and accurately set out in words and figures in the pleadings, which ordinance, contract and franchise was acquired by and is the sole and exclusive property of said complainant.

*Second*, that said ordinance, contract and franchise be and is hereby declared and held to be in every respect legal, valid and enforceable and binding upon said defendant, and said defendant is hereby perpetually enjoined from infringing, ignoring, rescinding or denying liability under said ordinance, contract and franchise in any of its parts, or from in any manner disturbing or interfering with the rights, privileges and benefits acquired by complainant thereunder.

*Third*, that said defendant be, and he is hereby, directed to rescind its resolution and ordinance adopted the 7th day of November, 1900, which

During the pendency of the original action the legislature
of Mississippi passed an act authorizing the cities and villages
of the State to prescribe, by ordinance, maximum rates and
charges for the supply of water, electric light and gas furnished
to cities and the inhabitants thereof. Laws of Mississippi,
1904, p. 231. Section 1 of this act is inserted in the margin.[1]

is in words and figures as follows: "Resolved, that the Mayor be and is
hereby instructed to notify the Vicksburg Waterworks Company that the
Mayor & Aldermen deny any liability upon any contract for the use of the
waterworks hydrants. That from and after August, 1900, they will pay
reasonable compensation for the use of said hydrants. That the City At-
torney take such action as shall be necessary to determine the rights of the
city in the premises."

And also to rescind the ordinance or resolution of said defendant adopted
the 7th day of February, 1901, when said defendant adopted the report of
the Committee on Waterworks, as set out in the pleadings.

*Fourth,* that the said defendant refrain from in any manner accepting the
benefits of or proceeding under the act of the legislature of the State of
Mississippi approved March 9, 1900, and from issuing bonds under and by
virtue of said act, or any other act or ordinance, for the purpose of erecting
waterworks of its own during the period prescribed by ordinance, contract
and franchise.

*Fifth,* that the said defendant refrain from constructing waterworks of its
own until the expiration of the period prescribed in said ordinance, contract
and franchise, dated the 16 day of November, 1886.

*Sixth,* that the said defendant be, and is hereby, required to pay all moneys
due or owing, or that *may be* hereafter be due and owing to said Complainant
under and by virtue of said ordinance, contract and franchise.

*Seventh,* that the said defendant be, and is hereby, perpetually enjoined
from making or adopting any resolutions, or ordinance, refusing to pay the
contract price of water fixed by said ordinance, contract and franchise until
the expiration of the period prescribed in said ordinance, contract and fran-
chise.

*Eighth* (relates to certain sewers).

*Ninth,* that said defendant pay the costs of this cause to be taxed.

[1] Section 1. *Be it enacted by the Legislature of the State of Mississippi,* That
the corporate authorities of any city, town or village now or hereafter in-
corporated under any general or specific laws of this state, in which any in-
dividual, company or corporation has been or hereafter may be authorized
by said city, town or village to supply water, electric light or gas to said city,
town, or village, or the inhabitants thereof, be and they are hereby empowered
to prescribe by ordinance maximum rates and charges for the supply of
water, electric light or gas furnished by such individual, company or corpo-
ration to such city, town or village or the inhabitants thereof, such rates and

On April 20, 1904, about one month before the rendition of the final decree in the original case, the city adopted two ordinances fixing the maximum charge for the use of water, one by what is known as the "flat rate" and the other for water measured by meters.

On December 7, 1903, the city passed an ordinance prohibiting the water company and gas company from charging damages and other penalties for failure to pay bills, until ten days after presenting the same and giving an opportunity for the payment thereof.

On the seventh of January, 1905, the water company, in view of this action by the city, filed another bill, which is the original bill in this case, and was numbered 79, in which it set forth the preceding history of the litigation, the decree of May 18, 1904, the city ordinance of December 7, 1903, and the two of April 20, 1904, and in that bill alleged its contract under the ordinance of 1886 and the former decree, and that the enforcement of the ordinances was in violation of that decree and the company's contract of 1886 and would be destructive of its business, and they prayed for an injunction. A temporary injunction was allowed, and afterwards, the case standing on the bill, answer, and exhibits attached thereto, a final decree was rendered in the case, which final decree is set forth in the margin.[1]

From this decree the present appeal has been prosecuted.

---

charges to be just and reasonable. And in case the corporate authorities of any such city, town or village shall fix unjust and unreasonable rates and charges the same may be reviewed and determined by the Circuit Court of the county in which said city, town or village may be; provided, that this act shall not be construed so as to impose (impair) the effect or obligation of any valid or binding contract with any waterworks company, electric light company or gas company now existing or heretofore made with any individual or water company, electric light or gas company.

[1] This case coming on to be finally heard at this Jan'y Term, 1906, of this court, upon the original bill of complaint and the answer of the defendant thereto, and all the exhibits which are made such, to said original bill of complaint and said answer, and all of the other pleas and proceedings in this cause, together with a certified copy of the charter of the said Vicksburg

*Mr. Hannis Taylor,* with whom *Mr. George Anderson* was on the brief, for appellants:

Appellee rests its claim of exemption from the right of the

---

Waterworks Company, which is filed in the record as evidence in the cause, also the petition of the defendant for a modification of the temporary injunction granted in this cause, so that the complainant shall not be authorized to cut off water from its patrons who refuse to pay the rates of complainant, claiming the right to have the injunction modified by virtue of the ordinances of the defendant, fixing water rates; and the motion of complainant to have said injunction granted heretofore made perpetual. And the court having heard the arguments of counsel, and being fully advised in the premises, and being satisfied that the complainant is entitled to the relief prayed for in its bill of complaint for full relief, it is thereupon finally ordered, adjudged and decreed:

*First.* That the defendant, the Mayor & Aldermen of the City of Vicksburg, is hereby denied the relief prayed for in its petition, to wit, that the injunction be modified so that the Mayor & Aldermen of the City of Vicksburg shall not be restrained from enforcing the ordinances passed by them fixing the water rates and prescribing rules and regulations of the Vicksburg Waterworks Company, and that the Vicksburg Waterworks Company shall not be permitted to cut off patrons' water, provided patrons pay the rates fixed in said ordinances.

*Second.* That said defendant be and is hereby enjoined from enforcing the said three ordinances described in said bill, to wit: An ordinance entitled "An Ordinance to fix and prescribe maximum rates and charges for water supplied to the inhabitants of the City of Vicksburg, whether measured by meters, and for other purposes," approved the 20th of April, 1904, an ordinance entitled "An Ordinance to fix and prescribe the maximum flat rates and charges for the supply of water to consumers in the City of Vicksburg, and for other purposes," approved the 20th day of April, 1904; and an ordinance entitled "An Ordinance to require waterworks, gas and electric companies to present bills before charging damages for a failure to pay them when due," approved the 8th day of December, 1903, so far as the latter relates to complainant.

*Third.* That the restraining order heretofore granted in this cause on the 11th day of January, 1905, be and the same is hereby made permanent.

*Fourth.* That the said defendant be and is hereby enjoined from in any manner interfering with the complainant's contract rights under its said contract with the City of Vicksburg entered into between Samuel R. Bullock & Company and said city under the ordinance of November 19th, 1886.

*Fifth.* That the defendant be and is hereby enjoined from interfering with the rules and regulations of Complainant, the Vicksburg Waterworks Company, and the water rates for the inhabitants of the city of Vicksburg now in force established by the Vicksburg Waterworks Company.

legislature of Mississippi to regulate water rates solely on § 13 of the ordinance of November 18, 1886, by which Bullock & Co. were authorized to construct and operate waterworks for public use. But the only legislative authority the mayor and aldermen of the city of Vicksburg had to enact this ordinance, is an act amending the charter of Vicksburg, approved March 7, 1884, authorizing them "to provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks." This emphatically negatives the idea that the city of Vicksburg was to have the power to grant any special privileges to appellee whatsoever. No authority was given, expressed or implied, to make the grant to appellee an exclusive one; nor was any limitation upon the power of the legislature subsequently to regulate or reduce water rates even hinted at. The act of March 18, 1886 is not in the record, but it is before the court as a part of its judicial knowledge. In the exercise of its appellate jurisdiction over the lower courts of the United States, this court takes judicial notice of the laws of all the States. *Renaud* v. *Abbott*, 116 U. S. 277; *Hanley* v. *Donoghue*, 116 U. S. 1; *Liverpool and G. W. Steam Co.* v. *Phenix Insurance Co.*, 129 U. S. 445.

The city of Vicksburg was not authorized to create a monopoly or to confer special privileges of any kind. Dillon on Mun. Cor. §§ 443, 457.

Exclusive rights to public franchises are not favored, and will never be presumed in the absence of an express grant. *Wright* v. *Nagle*, 101 U. S. 791; *Ruggles* v. *Illinois*, 108 U. S. 536. "Every statute which takes away from a legislature its power will be construed most strongly in favor of the State."

*Sixth.* That said defendant be and is hereby enjoined from interfering with the water rates known as the flat rates now in force established by the Vicksburg Waterworks Company.

It is further ordered, adjudged and decreed that the defendant pay all costs of this cause.

Finally ordered, adjudged and decreed this the 3d day of Jan. A. D. 1906.

*Vicksburg* v. *Waterworks Co.*, 202 U. S. 469 ; *Knoxville Water Works Co.* v. *Knoxville*, 200 U. S. 22.

The adjudication as to the exclusive right of appellee to maintain and operate waterworks for a definite period cannot in any manner give color to the present contention, never considered or passed upon heretofore, that the legislature of Mississippi has deprived itself of the power subsequently to authorize the city of Vicksburg to regulate rates of charges for water, and prescribe rules and regulations for the conduct of the water company. *Railroad Commission Cases*, 116 U. S. 307; *Freeport Water Co.* v. *Freeport*, 180 U. S. 587; *Rogers Park Water Co.* v. *Fergus*, 180 U. S. 624; *City of Joplin* v. *Light Co.*, 191 U. S. 150; *Owensboro Water Co.* v. *Owensboro*, 191 U. S. 358; *Stanislaus* v. *San Joaquin &c. Co.*, 192 U. S. 201.

*Mr. Joseph Hirsh*, with whom *Mr. Murray F. Smith* was on the brief, for appellee:

The questions now at issue have already been heretofore conclusively adjudicated and are no longer open for investigation and determination here again.

No case can be properly tried by installments; no complainant or defendant can speculate with judicial decisions; when a defendant or complainant once has a standing in court to uphold or to annul a contract or any other solemn undertaking, that it is incumbent upon both parties to the litigation to formulate, present, and seek a final disposition of all material issues involved; when a contract is presented for consideration in its entirety, and when the owner of the contract prays that the other party to the contract should be prohibited from annulling it, destroying it, or impairing it, if the other party then has any real or substantial defenses known to him upon the basis of which said contract can be assailed, it is the bounden duty of that party to interpose such defenses—not one, but all—and, failing to do so, should not thereafter be permitted to reopen the controversy to interpose

defenses known to him and existing at the time the contract is under consideration and an adjudication of its validity is sought. 24 Am. & Eng. Ency. of Law (2d ed.), pp. 781 and 782.

Under the laws of Mississippi, as construed by the highest court, and under the constitution of 1890, the contract of the waterworks company is unassailable.

The decision in the *Freeport case* and *Rogers Park case* and other cases announcing similar principles must be construed, of course, in the light of the facts involved in those cases.

If a state legislature has reserved to itself the right to amend, repeal, or alter a state statute, and to amend or repeal a corporate charter, it can be readily maintained that by the creation of such a charter or by the enactment of such a law the legislature has not parted with its power to regulate a corporation organized under such laws, or to regulate, change, modify, or vary rates authorized by such laws. A corporation which makes a contract under such laws is chargeable with knowledge thereof, and if by so doing it invites destruction by a practical confiscation of its property under a so-called regulation of its rates, it has only itself to blame. When its powers are limited by the law under which it claims a right or privilege, that law of course furnishes the measure of its right or privilege, and it cannot be heard to complain if that law operates to its detriment. But in the State of Mississippi in the year 1886, there was not vested in the legislature the right to repeal, annul, or abrogate a charter procured under the laws then existing. That charter was a contract, and was protected both by the state and the Federal constitutions, and the Supreme Court of the State of Mississippi has not held, so far as we have been able to ascertain, that a charter thus obtained prior to the constitution of 1890 was subject to repeal or amendment unless such right was especially reserved in the act, and the provision of the constitution of 1890 which vested the power in the legislature to repeal or amend corporate charters expressly exempts from its operation any charter

then existing and irrevocable, and was mainly intended to be prospective in its operation.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

It is contended on behalf of the appellee that the original decree of May 18, 1904, finally disposed of all the issues between the parties, including the right of the city to make rates for water consumption to private consumers under the authority of the act of March 19, 1904, and that the present controversy is foreclosed by the decree in the former case.

While it is true that the decree is very broad, we cannot agree to the contention of the appellee that it finally disposed of the matter now in controversy. When the case was first here, reported in 185 U. S. 65, while there are expressions in the opinion affirming the validity of the contract and the authority of the city to make it, the issue really decided was as to the jurisdiction of the court as a Federal court, which was sustained, and the cause remanded for further proceedings. Upon the second hearing of the case, and the appeal here, the opinion shows that the adjudication was regarded as settling the right of the Vicksburg Waterworks Company, under the contract, to carry on its business without the competition of works to be built by the city itself, as the city had lawfully excluded itself from the right of competition; and it was further held, as incidental to that controversy, in passing upon an issue made in the suit, that the Vicksburg Waterworks Company had succeeded to all the right, title, and interest of the original contracting party, and that the contract, having been made prior to the constitution of 1890, was not controlled by its provisions. The right to recover for rentals was also directly involved, as the city had denied its liability therefor, and an accounting was prayed in the original bill and the decree specifically disposed of that issue. It is true that in the answer it was averred that the alleged contract imposed upon the inhabitants of Vicksburg an onerous

and extortionate burden; "that no such contract would now be made with the Vicksburg Waterworks Company or any other company; that the rates authorized in said ordinance far exceeded the rates charged in other cities under like circumstances and, in general terms," the city denied that it was bound to the complainant by contract; "that for the many reasons therein set forth, no liability existed on the part of the city by reason of the contract."

An examination of the record in the former case shows that the only testimony taken in the case, as to the reasonableness of the rates charged to private consumers, was on behalf of the company, and tended to show that the rates charged were reasonable, and if it could be said that the pleadings put in issue the reasonableness of the rates then charged, was the right of the city to regulate rates under a subsequent law of the State necessarily involved and concluded? The determination of issues as to the right of injunction against the city building its own works, or denying liability or refusing to pay the rentals contracted for, and a finding that existing rates were reasonable, did not necessarily conclude a controversy which might thereafter arise, as to the right of the city to fix rates when the legislature of Mississippi should pass a law for that purpose, giving the city the right to regulate the same. It is to be remembered that when the bill was filed in the original case no such law had been passed; that when the act of March, 1904, went into effect the case was nearly ready for final decree, and the city passed its ordinances long after the beginning of the suit, and shortly before that decree. No supplemental bill was filed, but after the decree, in January, 1905, the present independent suit was brought, with a view to enjoining the proposed action of the city in enforcing ordinances regulating the rates by charges other than those contained in the contract.

Upon the appeal, the question seems to have been argued by the city as though made in the case, though the brief on behalf of the appellee contends that the act of 1904 was not

involved. But a decree must be read in the light of the issues involved in the pleadings and the relief sought, and we are of opinion that the matters now litigated were not involved in or disposed of in the former case, and that when properly construed the decree does not finally dispose of the right of the city to regulate rates under a law passed after the contract went into effect and long after the bill was filed in the case.

Holding, then, that the plea of *res judicata* must be denied, had the city authority, under the charter of Vicksburg, passed in 1886, to make a binding contract, fixing maximum rates for water supply to private consumers for a definite period, thirty years in the present case? The grant of legislative power upon its face is unrestricted, and authorizes the city "to provide for the erection and maintenances of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks."

That a State may, in matters of proprietary rights, exclude itself from the right to make regulations of this kind, or authorize municipal corporations to do so, when the power is clearly conferred, has been too frequently declared to admit of doubt. *Los Angeles* v. *Los Angeles City Water Company*, 177 U. S. 558; *Walla Walla* v. *Walla Walla Water Company*, 172 U. S. 1–7; *New Orleans Waterworks Company* v. *Rivers*, 167 U. S. 674; *Freeport Water Company* v. *Freeport*, 180 U. S. 587–593.

In the latter case this court, following the construction of the Supreme Court of Illinois, held that where a city council was authorized to contract with any person or corporation to construct and maintain waterworks at such a rate as may be fixed by ordinance for a period not exceeding thirty years, the words "fixed by ordinance" being capable of application so as to make one ordinance endure for the period of thirty years, for which the contract was made, or to give the right to pass ordinances from time to time regulating rates, the latter construction was adopted.

In the cases generally in this court it will be found that, in determining the matter of contract, the local decisions have been given much weight and, ordinarily, followed. As this is a Mississippi contract, and the power was exercised under the authority of an act of the legislature of that State, we naturally look to the decisions of the courts of that State, particularly to such as had given construction to similar charters at the time the contract was made, with a view to determining the extent of the power conferred.

While the case now before us was pending, Griffith and others, citizens of Vicksburg, filed a bill, setting forth the city ordinances of 1903 and 1904, and asking to have them established and maintained and an injunction granted against enforcing charges for higher rates, and upon appeal the case went to the Supreme Court of Mississippi, and is reported in 40 So. Rep. 1011. In that case the Supreme Court of Mississippi held that the municipal corporation represented the citizens and taxpayers of the city, and that where a right had been adjudged as between the company and the city it would conclude private citizens, and while the court declined to pass directly upon the question here involved, because of its pendency in the Federal courts, it used this pertinent and suggestive language:

"We decline to follow the decision in *Griffin* v. *Goldsboro Water Company* (N. C.), 30 S. E. 319; 41 L. R. A. 240, in holding that while a water company which accepts an ordinance by which a maximum rate is fixed is bound, and cannot exceed the same because of its contract, yet such rates are not binding upon consumers, who have a right to litigate against unreasonable charges. This holding, it seems to us, practically denies the power of a company, under a contract embodied in its charter giving the power, so to fix a rate as to bind a private consumer at all. It opens a never-ending and limitless field of litigation. It is well settled that the courts cannot fix a rate; and if, proceeding duly under statutes enacted for that purpose, the municipality cannot do so, or authorize the com-

pany by contract to do so, and thereby bind the citizens, then there is no authority by which it can be done.

"It is not a matter open to serious discussion in this State, since the decision by this court in the case of *Stone* v. *Railroad Company*, 62 Mississippi, 607, 52 Am. Rep. 193, decided at the April term, 1885, and before the act of 1886 (Laws 1886, p. 694, c. 358), amending the charter of Vicksburg, was enacted, that a *quasi*-public corporation may have a contract right to fix rates within a certain designated maximum, and that the rates so fixed are matter of contract guaranteed by the contract clauses of the United States Constitution. In that decision the court was manifestly directing its observations to the binding character of the rates as between the company and the shippers; otherwise, the decision was practically meaningless and without point. The philosophy of the situation is simple. Granting that the company is lawfully invested with authority to fix its rate, then such rate being so fixed by it within the maximum limit allowed by the charter, or allowed by the duly authorized ordinance, is by the courts presumed to be reasonable; and it is not permissible for each individual citizen, in every controversy that may arise, to have that question, once passed upon by the lawfully constituted public authorities charged with power in the premises, reopened and litigated anew."

The case to which the court refers in the preceding extract, *Stone* v. *The Railroad Company*, 62 Mississippi, 607, as having been decided prior to the enactment of the charter of Vicksburg under which the contract in question was made, did not directly involve the question of authorizing municipal corporations to make such contracts, but did maintain, after an exhaustive consideration of the subject, that a grant to a railroad company, in the charter, of a right to fix rates within maximum limits named, was a contract, within the meaning of the Federal and state constitutions, which could not be violated by a subsequent attempt to prescribe different rates, and held that the railroad company's grant was not a renun-

ciation of the legislative power to secure reasonable rates, but rather an exercise of that power, and, when rights were thus conferred, to that extent there was a renunciation of the right of the State to control the subject. In the course of the discussion the learned judge, speaking for the court, said:

"The power to contract is an essential attribute of sovereignty and is of prime importance. Its exercise has been productive of incalculable benefits to society, however great may be the evils incident to its injudicious employment. It cannot be denied merely because of its liability to abuse. The power to contract implies the power to make a valid contract. . . . The right to grant charters includes the right to grant such as will be upheld. Conferring power on the grantee of the franchise to fix rates of compensation at discretion, or within prescribed limits fixed by the charter, has been the common practice of the legislatures of the States of the United States from an early period of their history. The right of the corporators to exercise the powers conferred by the act of incorporation, whether to fix rates themselves or to take those fixed by their charter and to rest securely on its provisions in this respect, has hitherto been generally regarded as indisputable.

"A grant in general terms of authority to fix rates is not a renunciation of the right of legislative control so as to secure reasonable rates. Such a grant evinces merely a purpose to confer power to exact compensation which shall be just and reasonable.

\*     \*     \*     \*     \*     \*     \*     \*

"If the grant can be interpreted without ascribing to the legislature an intent to part with any power, it will be done. Only what is plainly parted with is gone. Fixing rates in a charter is a specification of what is reasonable—an exclusion of tacit or implied conditions on the subject. It is an essential part of the contract of incorporation, the most important condition of its existence, the inducing cause of its acceptance."

We are referred to other cases in Mississippi which deal directly with the extent of the power conferred upon municipal corporations in charters in general terms, some of which we may notice.

In *Light, Heat & Water Company* v. *City of Jackson*, 73 Mississippi, 598, the city of Jackson had filed its bill, undertaking to annul a contract binding the city to pay for water for a period of twenty years at a price and rate fixed in a certain ordinance, on the ground that it was *ultra vires* and without authority from the legislature. In that case the authority conferred was in general terms, authorizing the city to contract with any reliable corporation, association or individual for supplying the city of Jackson with water and electric or gas lights from year to year. Under authority of this general power the city undertook to make a contract with the Light, Heat and Power Company of Jackson, contracting for the furnishing of water to the public at certain annual rentals for a period of twenty years, and fixing a certain rate for annual rentals to private consumers. The Supreme Court of Mississippi dealt directly with the question: Was the contract made between the city and company and set forth in the bill invalid for want of power in the city to contract for a series of years? And the court said:

"In view of the nature and character of the subject-matter of the contract which the board of mayor and aldermen of the city of Jackson was authorized to make by the third section of the act of February 29th, 1888, we think the contract entered into with the appellant was within the delegation of power so far as the time of its duration is involved. . . . We know that the machinery, mains and appliances required for supplying the city with water are costly to begin with, and are relatively of little value if removed when once located. Permanency of the plant is essential to the realization of any profit in the enterprise, and in cities having no greater population than that of Jackson the use of water for municipal purposes would probably be a prerequisite to secure the in-

vestment of the capital necessary to the construction of the plant. The words 'from year to year' relied upon by the appellee as limiting the power of the officers of the city to the making of the annual contracts, derived much of their significance from the subject and nature of the thing contracted for, the character of the body on which the power is conferred, the end to the attainment of which the power is to be exercised, and the extent to which such powers for such purposes are usually conferred.

"A few days after the act was passed, a commission was appointed by the legislature to contract for water for the state institutions, situated in and near the city, for the term of twenty-five years. In this act power was conferred upon all municipalities to enter into contracts for a term not exceeding twenty-five years, for supplies of water, on a two-thirds affirmative vote of the qualified electors, but the act provided that it should not apply to municipalities, whose charters already conferred the power of making contracts for water.

　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"A contract made by the authorities of a municipality with a water company for supplying the city with water for a period of twenty years, is within the power conferred on them by an act of the legislature authorizing them to contract with any reliable corporation for supplying the city with water from year to year, in view of the purpose of the delegation of power, the nature of the body on which it was conferred, the subject-matter of the contract, the large outlay for machinery and appliances, the profit of which was dependent upon the permanency of the enterprise, and the cotemporaneous legislation, from which the intent to authorize a contract of as great duration as twenty-five years is deducible."

Again, in the case of *Reid* v. *Trowbridge*, 78 Mississippi, 542, the mayor and aldermen of the city of Vicksburg had been authorized, in general terms, to provide for the lighting of said city by electric light or other method. Under this general power the city made a contract with the Vicksburg Railroad,

VOL. CCVI—33

Power and Manufacturing Company for lighting the streets by electricity, at a given rental per annum, for one hundred and twenty-five lights, for a period of ten years. The taxpayers of the city of Vicksburg filed a bill to enjoin the carrying out of the contract, alleging that the city had no authority to make such a contract without submitting it to a vote of the people under the act of March, 1888, passed subsequent to the charter, requiring submission to a vote of the people, that the contract was unreasonable and oppressive, and that the council had acted arbitrarily and without exercising discretion in awarding it. The court held that the act of 1888 had no application to the case, and, speaking of the general terms of the charter authorizing a contract for lighting purposes, said:

"The intent of the legislature to confer the power without restriction appears to us to be too plain, from the collocation and order and sequence of the sections and article of the charter act, to admit of obscuration by learned argument about original power. The very last legislative action on the subject, that in the municipal charter of the Code of 1892, shows that the lawmakers thought the power to be one to be conferred or prohibited, because it expressly confers it on cities and towns and prohibits its exercise by villages.

*       *       *       *       *       *       *       *

"It is claimed now that the last clause of section 1 of the first quoted of the above acts, that approved March 10, 1888, applied to and modified the charter of the city of Vicksburg so as to make the contract here in controversy void because not submitted to vote. In order to this result it is claimed that, in the charter of Vicksburg, it is not 'otherwise provided,' because the charter expressly confers the power, without restriction, on the municipal board at any 'regular or special meeting.' Besides, in construing the section of the act secondly above quoted, this court expressly so held in the case of *Light &c. Co.* v. *Jackson*, 73 Mississippi, 644. If the precise point was not made, the omission is quite significant of the opinion of the eminent counsel for appellee in that case

that there was nothing in it. Aside from this, the question was at the very root of the cause, and was considered and decided, and it is the exact question in the case at bar, except that this case is somewhat stronger in favor of the power than the case decided.

"By section 3 of the act of February 29, 1888, the Jackson board was 'hereby authorized and empowered to contract,' etc., while by the Vicksburg charter act, the board was authorized to so contract 'at any regular or special meeting.' We presume that no charter then existent 'otherwise provided' by an express prohibition of electric lighting without vote. The grant of the power without restriction is to 'otherwise provide.' "

And the court held that under this power the municipal authorities had the right to make the contract for electric lights without advertising for bids and without submitting the matter to a popular vote, and the power was not taken away by the act of March, 1888.

In this case the learned judge, speaking for the court, further said:

"Within its charter powers, the board has a discretion independent of courts, and no exercise of it will be held void for unreasonableness, unless so gross as to strongly suggest fraud or corruption. The people elect their council, and the courts are not chosen members of it."

In the light of these decisions, and others might be cited, we reach the conclusion that, under a broad grant of power, conferring, without restriction or limitation, upon the city of Vicksburg the right to make a contract for a supply of water, it was within the right of the city council, in the exercise of this power, to make a binding contract, fixing a maximum rate at which water should be supplied to the inhabitants of the city for a limited term of years, and, in the absence of a showing of unreasonableness "so gross," as the court of Mississippi has said, "as to strongly suggest fraud or corruption," this action of the council is binding, and for the time limited puts the

right beyond legislative or municipal alteration to the prejudice of the other contracting party.

While we, therefore, reach the conclusion that the former case did not adjudicate the matter, we think the contract in this respect was within the power of the council and cannot be violated consistently with the contract rights of the company by the subsequent ordinances of the city.

In this case the Circuit Court rendered a final decree practically upon the bill and answer. No testimony was taken, and all that was before the court was the bill, answer and exhibits. We think the decree goes too far in enjoining the city from interfering with the contract right of the company to charge the rates fixed thereby, in view of the allegations of the answer, that the rates charged by the company exceeded those named in section 13 of the ordinance of 1886.

The decree should be modified, so as to enjoin interference on the part of the city during the term of this contract, with the right of the company to charge rates not in excess of fifty cents a thousand gallons to private consumers, as set forth in the ordinance.

With this modification, the decree will be

*Affirmed.*