## SUMTER GAS & POWER CO. v. CITY OF SUMTER et al.

(Circuit Court of Appeals, Fourth Circuit. July 17, 1922.)

No. 1987.

1. **Municipal corporations ☞619—Not empowered to regulate rates in absence of statute.**

   A city council has no power to regulate rates unless it is plainly granted by legislative authority.

2. **Gas ☞14(2)—Power to regulate rates not implied from grant of authority to make ordinances and regulations relative to streets.**

   The power to regulate gas rates cannot be implied from the legislative grant of authority to a city council to make ordinances and regulations relative to streets.

3. **Gas ☞14(2)—Statute relating to exclusive franchises held inapplicable to ordinances granting right to operate gasworks in city without attempting to grant exclusive right.**

   Civ. Code S. C. 1912, § 3014, empowering municipalities to grant exclusive franchises for furnishing light and water, provided the ordinance or resolution shall fix a maximum rate, *held* not applicable to an ordinance granting the right to operate gasworks in a city without attempting to grant an exclusive right.

4. **Gas ☞14(2)—Statute empowering Public Service Commission to regulate gas rates except in specified city held not to empower such city to regulate rates.**

   Act S. C. Feb. 23, 1910 (26 St. at Large, p. 564), creating a Public Service Commission with power to regulate gas rates, and excepting the city of Sumter from its operation, does not empower such city to regulate rates, since the mere exception of the city does not confer powers which the city did not theretofore possess.

5. **Municipal corporations ☞680, 681(1)—Power to make ordinances respecting streets embraces power to grant franchise to use streets for telephone poles or gas mains.**

   The power to make ordinances and regulations respecting streets embraces the power to grant a franchise to a telephone company or a gas company to use the streets for poles or mains.

6. **Gas ☞7(1)—Telegraphs and telephones ☞10(10)—Franchise accepted becomes a contract binding on both parties.**

   When a franchise granted to a telephone company or a gas company to use the streets for poles or mains is accepted and acted upon, a contract arises binding on both parties.

7. **Constitutional law ☞135—Power to contract for use of streets subject to right of state to regulate rates in exercise of police power.**

   The power of a city to contract for the use of the streets implied in the power granted to make regulations as to streets is subject to the general police power of the state to regulate rates of public service corporations where the Legislature had not expressly conferred upon the city the power to make an irrevocable contract as to rates.

8. **Gas ☞14(1)—Rates fixed by contract subject to power of state to regulate rates are binding on both parties until the state exercises such power.**

   Where a city was empowered to make regulations with respect to streets, but was not empowered to make contracts fixing the rates to be charged by corporations given the right to use streets, the state had a right in the exercise of its police power to change the rates fixed by the contract giving a gas company the right to use the streets, but where the state does not exercise its right to change such rates, the rates are binding on both parties and cannot be changed by the court.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Gas ⊂⇒14(1)—Legislature could ratify contract between city and gas company fixing rates.**

Where a city without the right to so do entered into a contract with a gas company fixing the maximum rates to be charged by the company, the Legislature by ratifying such contract could make it an irrevocable contract with the same force and effect as if the statute authorizing the city to regulate rates had been enacted cotemporaneous with the ordinance granting the company the franchise fixing the rates, since the company, having accepted the agreement and received the benefits, could not complain of its subsequent legislative sanction and ratification.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Bill by the Sumter Gas & Power Company against the City of Sumter and its City Council. From the judgment rendered, plaintiff appeals. Affirmed.

G. L. B. Rivers, of Charleston, S. C., and R. O. Purdy, of Sumter, S. C. (Purdy & Bland, of Sumter, S. C., and Hagood, Rivers & Young, of Charleston, S. C., on the brief), for appellant.

A. S. Harby and R. D. Epps, both of Sumter, S. C. (Lee & Moise, Epps & Levy, and Harby, Nash & Hodges, all of Sumter, S. C., on the brief), for appellees.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. On September 26, 1911, the council of the city of Sumter passed an ordinance granting to Edward L. Rieha, his associates, successors, and assigns, for the period of 50 years, the right to operate gasworks in the city, and for that purpose to lay mains under the streets, lanes, alleys, sidewalks, public squares, and places. The ordinance provided when the consumption by public and private use was less than 30,000,000 feet a year the charge should not exceed $1.50 a thousand feet; when more than 30,000,000 and less than 50,000,000 feet, $1.45; when more than 50,000,000 feet, $1.35. By its terms the ordinance was not to be effective unless Rieha within 30 days should execute and file a written acceptance of the ordinance, agreeing to be bound by its requirements. Rieha duly filed his written acceptance. In 1912 the complainant, Sumter Gas Company, assignee of Rieha, established gasworks, and has maintained the rates prescribed by the ordinance except for such periods as the city council consented to temporary increases on account of war conditions. This consent always expressly reserved the rights of the city under the original ordinance and its acceptance. Under this arrangement a temporary maximum rate of $2 was in effect on June 29, 1921. On that day the council notified the gas company that after July 1, 1921, the maximum rate fixed by the franchise must be restored. Thereafter, on January 18, 1922, the board of directors of the gas company passed a resolution reciting inadequacy of a maximum rate of $1.50, and even a rate of $2, to pay operating expenses, the usual and proper reserves, and a return upon its property; providing for the establishment of a

maximum rate of $2; and directing officers of the company to institute a suit in the District Court for the Eastern District of South Carolina to enjoin the city and the city council from interfering with the rate of $2.

Accordingly, on January 31, 1922, the bill in this case was filed, asking for an injunction against interference by the municipal authorities of the $2 rate on these grounds:

(1) The rate fixed by the franchise ordinance has become confiscatory.

(2) The franchise ordinance and its acceptance by Rieha did not "constitute a contract, but was a regulatory provision prescribing what was at that time regarded as a reasonable charge."

(3) If intended as a contract, the city of Sumter had no power to make it, "for the reason that the fixing of rates to be charged by public service corporations was and is a matter within the police power of the state of South Carolina, and that the city of Sumter, as a governmental agency of the state of South Carolina, has been and is vested with such police power and regulatory control, and that the state of South Carolina has never empowered the city of Sumter to make any contract which would abridge or alienate said police power."

(4) The statute of South Carolina of February, 1910, and subsequent statutes providing a Public Service Commission to prescribe and regulate rates of public service corporations for water, gas, and electricity expressly except from their operation the city of Sumter, thus leaving such rates in that city to be prescribed and regulated by its municipal authorities.

An order, dated January 31, 1922, was made requiring defendants, city of Sumter, L. D. Jennings, D. R. McCallum, and J. A. Raffield, composing the city council, to show cause why they should not be enjoined from interfering with the rate of $2 per 1,000 feet charged by the gas company. The defendants on February 17, by motion to dismiss the bill and by their return to the order to show cause, relied on these defenses:

(1) The franchise ordinance and its acceptance by Rieha constituted a valid contract which the city was empowered by its charter to make.

(2) The right to use the streets for the purpose of distributing and selling its gas was conferred on the gas company on the condition that it would adhere to the maximum rates prescribed, and so long as it used the right it could not repudiate the burden of the condition.

On the same day, February 17, defendants filed in the record a statute of South Carolina of February 16, 1922 (32 St. at Large, p. 1571), providing:

"That an ordinance enacted by the mayor and council of the city of Sumter, South Carolina, done and ratified September 26, 1911, entitled: 'An ordinance to permit Edward L. Reiha and associates to construct and operate gasworks in Sumter, South Carolina,' be and the same is hereby ratified, validated and confirmed."

Without passing on the motion to dismiss, the court in terms refused an application for a temporary injunction. To protect the complainant, however, from irreparable injury which would result to it

if this court should hold the injunction should have been granted, the District Court ordered that the defendants be enjoined from enforcing the rates provided by the ordinance of September 26, 1911, pending the determination of the appeal, on complainant's giving bond to secure the refund of any charges collected in excess of those rates.

The charter of the city of Sumter confers upon the council power—

"to make all such ordinances relative to the streets, roads, markets, public squares, public scales, weights, measures, fire department, water supply, police and health of said town as they may deem proper."

The state statute (Civ. Code S. C. 1912, § 2946) relative to all cities and towns of more than 1,000 inhabitants provides that the city council—

"shall have full power to make, ordain and establish all such rules, by-laws, and regulations and ordinances respecting its roads, streets, markets, police, health and order of said city or town as shall appear to them necessary and proper for the security, welfare and convenience of said city or town, or for preserving the health, peace, order and good government within the same."

[1, 2] A city council has no power to regulate rates unless it is plainly granted by legislative authority. Such power cannot be implied from the legislative grant of authority to the city council of Sumter to make ordinances and regulations relative to streets. City of Winchester v. Winchester Waterworks Co., 251 U. S. 192, 40 Sup. Ct. 123, 64 L. Ed. 221; Home Telephone Co. v. Los Angeles, 211 U. S. 265, 273, 29 Sup. Ct. 50, 53 L. Ed. 176.

[3] Section 3014, Code of South Carolina 1912, provides that municipalities may grant for 30 years exclusive franchises for furnishing light and water by two-thirds vote of the council confirmed by the vote of a majority of the qualified electors, provided, the ordinance or resolution shall fix a maximum rate. This statute has no application, for the reason that no attempt was made by the city council of Sumter to grant an exclusive franchise, and it does not appear that there was a favorable two-thirds vote of the city council or confirmation by a majority of the qualified electors.

[4] The statute of 1910 (Act S. C. Feb. 23, 1910 [26 St. at Large, p. 564]) creating a Public Service Commission and empowering it to prescribe and regulate rates for gas, excepting the city of Sumter from its operation, does not confer on the council of that city the right to regulate rates. The mere exception of the city of Sumter could not have the effect of conferring powers on the city council of Sumter which it did not before possess. The city council of Sumter therefore has not been granted the power to regulate rates.

The transaction shows on its face that it was not an attempt on the part of the city council to regulate rates under its police power, or of Rieha to submit to such regulation. The intention and effort was to make a binding contract—the consideration to the city being that its inhabitants should have gas at a rate which would not exceed the maximum rates prescribed.; the consideration to Rieha being that he and his assigns should have the right to lay their mains in the streets and should have the right for 50 years to charge any rate they pleased within the maximum limits. There was a formal offer by the city of

the franchise on a condition as to rates, and formal acceptance and action by Rieha. This made a binding contract if the city had the power to make it. Columbus Ry., L. & P. Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886.

[5, 6] The power to make ordinances and regulations respecting streets embraces the power to grant a franchise to a telephone company or a gas company to use the streets for poles or mains, and, when the franchise is accepted and acted upon a contract arises, binding on both parties. Owensboro v. Cumberland T. & T. Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389. The court in that case said, as to an ordinance purporting to repeal the ordinance granting the franchise:

"It is a plain attempt to destroy the vested property right under which a great plant has been installed and operated for more than 25 years. When that grant was accepted and acted upon by the grantee, it became a contract between the city and the telephone company, which could not be revoked or repealed, unless the power to repeal was clearly and unmistakably reserved."

See Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282; N. Y. Electric Lines v. Empire City Subway, 235 U. S. 179, 194, 35 Sup. Ct. 72, 59 L. Ed. 184, L. R. A. 1918E, 874, Ann. Cas. 1915A, 906.

[7] It is true this power to contract for the use of the streets and the conditions of the use, implied in the power granted to make regulations as to streets, is subject to the general police power of the state to regulate rates of public service corporations. Since the state Legislature did not in express terms confer upon the municipality the power to make an irrevocable contract as to such rates, any rate fixed by such contract was subject to regulation under the police power of the state. Milwaukee Electric R. & L. Co. v. Railroad Commission, 238 U. S. 174, 35 Sup. Ct. 820, 59 L. Ed. 1254; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 508, 27 Sup. Ct. 762, 51 L. Ed. 1155; Puget Sound T. L. & P. Co. v. Reynolds, 244 U. S. 574, 37 Sup. Ct. 705, 61 L. Ed. 13.

Among cases holding such a transaction to be a binding contract beyond the control of the state's police power when, and only when, the right to contract is in express terms conferred by statute on the municipality, are Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, 24 Sup. Ct. 756, 48 L. Ed. 1102; Columbus R. L. & P. Co. v. Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Vicksburg v. Vicksburg W. Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155; Detroit Ry. Co. v. Michigan, 242 U. S. 238, 37 Sup. Ct. 87, 61 L. Ed. 268.

[8] Comparing Owensboro v. Cumberland T. & T. Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389, with the other cases cited, we reach this conclusion: If the state had conferred on the city of Sumter in express language the power to make an irrevocable contract for rates, the grant would have been a surrender of the state's police power to change the rate fixed by the contract. The grant of power which

was made to the city of Sumter not being in express terms to make an irrevocable contract, but only to make regulations and ordinances with respect to streets, the city was empowered thereby to contract for the use of the streets for gas mains on such terms and conditions as it saw fit, but any contract made in respect of rates was subject to displacement by the exercise by the state of its police power to regulate rates. Therefore the ordinance of the city granting the use of the streets for gas mains with conditions as to rates to be charged, accepted, and acted upon by Rieha, in whose favor the franchise was granted, became a contract binding on both parties, subject to the exercise by the state of its police power to regulate rates. Since the state has not undertaken to exercise its right to alter the rates contracted for, they are still binding on both parties and are beyond the control of the court. The courts cannot grant relief against rates named in a contract binding on the parties. Southern Iowa Elec. Co. v. Chariton, 255 U. S. 539, 41 Sup. Ct. 400, 65 L. Ed. 764.

[8] So far we have dealt with the case as if the ratifying statute had not been passed. Had the ordinance granting the franchise to Rieha on his acceptance of its terms been ratified by the Legislature at the time, it would manifestly have been equivalent to an express grant of power to the city of Sumter to contract for rates, just as effectual as if such power had been embraced in the charter of the city. In any view the ordinance and its acceptance lacked only legislative sanction and authority to become an irrevocable contract. A ratifying statute passed at the time would have given that sanction and authority. The statute, though not actually enacted until both parties had acted upon the contract which they undertook to make, has the same force and effect as if it had been passed cotemporaneously with the ordinance. It impaired no constitutional rights of the gas company.

The only semblance of right asserted by complainant is the right to repudiate an agreement, admittedly binding in both law and equity as a contract except for the lack of the sanction of the General Assembly of the state. Having accepted the agreement and received the benefits of it, the gas company has no ground to complain of its subsequent legislative sanction and ratification. Randall v. Krieger, 23 Wall. 137, 23 L. Ed. 124; Watson v. Mercer, 8 Pet. 88, 8 L. Ed. 867; Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; Westside Belt R. Co. v. Pittsburgh Construction Co., 219 U. S. 92, 31 Sup. Ct. 196, 55 L. Ed. 107; Satterlee v. Mathewson, 2 Pet. 380, 7 L. Ed. 458; Gross v. United States Mortgage Co., 108 U. S. 477, 2 Sup. Ct. 940, 27 L. Ed. 795.

It may be that apart from its general police power the state of South Carolina has the power to waive or change, with the consent of the gas company, any contract as to rates made with the city of Sumter as a municipality.

"A municipal corporation is simply a political subdivision of the state, and exists by virtue of the exercise of the power of the state through its legislative department." Worcester v. Street Railway Co., 196 U. S. 539, 25 Sup. Ct. 327, 49 L. Ed. 591.

We are not called upon to decide whether the gas company may obtain relief under the statute of South Carolina of March 24, 1922 (32 St. at Large, p. 938), conferring upon the Railroad Commission the right to regulate rates of every "public utility" in the state.

Affirmed.