## DOW *v.* BEIDELMAN.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 1001. Submitted November 21, 1887. — Decided April 16, 1888.

A statute of a State, fixing at three cents a mile the maximum fare that any railroad corporation may take for carrying a passenger within the State, is not, as applied to a corporation reorganized by the purchasers at the

sale of a railroad under a decree of foreclosure, shown to be a taking of property without due process of law, in contravention of the Fourteenth Amendment to the Constitution of the United States, by evidence that under that restriction, and with its existing traffic, its net yearly income will pay less than one and a half per cent on the original cost of the road, and only a little more than two per cent on the amount of the bonded debt, without any proof of the cost of the bonded debt, or the amount of the capital stock of the reorganized corporation, or the price paid by this corporation for the road.

A statute of a State, classifying its railroad corporations by the length of their lines, and fixing a different limit of, the rate of passenger fares in each class, does not deny to any corporation the equal protection of the laws, within the Fourteenth Amendment to the Constitution of the United States.

THE original action was brought in an inferior court of the State of Arkansas by Beidelman against Dow, Matthews and Moran, Trustees, alleging that the defendants were the legal owners and in possession of the Memphis and Little Rock Railroad, in that State, more than a hundred miles long, and charged and took of the plaintiff more than three cents a mile for a ticket between two stations twenty-three miles apart on that road, in violation of a statute of the State of April 4, 1887, the material provisions of which were as follows:

SEC. 1. "The maximum sum which any corporation, officer of court, trustee, person or association of persons, operating a line of railroad in this state, shall be authorized to charge and collect for carrying each passenger over such line within this state, in the manner known as first class passage is hereby fixed at the following named rates: On lines of railroad fifteen miles or less in length, eight cents per mile. On lines over fifteen miles in length, and less than seventy-five miles in length, five cents. On lines over seventy-five miles in length, three cents per mile." ·

SEC. 3. "Any of the persons or corporations mentioned in section one that shall charge, demand, take or receive, from any person or persons aforesaid any greater compensation for the transportation of passengers than is in this act allowed or prescribed, shall forfeit or pay for every such offence any sum not less than fifty dollars nor more than three hundred dollars, and costs of suit, including a reasonable attorney's fee, to be

taxed by the court where the same is heard, on original action, by appeal or otherwise, to be recovered in a suit at law by the party aggrieved in any court of competent jurisdiction." Acts of 1887, p. 227.

At the trial before the court, a jury having been waived, the parties agreed upon the following statement of facts:

"The Memphis and Little Rock Railroad Company was incorporated under the act of the General Assembly of the State of Arkansas, approved January 11, 1853, which act is taken as a part hereof. See acts of 1852, p. 130.

"On May 1, 1860, it mortgaged its property to Samuel Tate, Robert C. Brinckley, and George C. Watkins, trustees. On March 1, 1871, it executed a second mortgage on its property and charter to Henry F. Vail, as trustee. On March 17, 1873, this second mortgage was foreclosed by sale under the power, and the purchasers, on November 17, 1873, organized a new company under the charter, which they called the Memphis and Little Rock Railway Company.

"On December 1, 1873, the Memphis and Little Rock Railway Company mortgaged its charter and property to certain trustees. This mortgage not being paid at maturity, the trustees thereunder brought suit in the United States Circuit Court for the Eastern District of Arkansas for its foreclosure, and the trustees in the mortgage of May 1, 1860, were, on their own application, made parties complainant; and on November 21, 1876, a final decree was entered in the cause, directing the foreclosure of both mortgages and a sale for their satisfaction.

"On April 27, 1877, the mortgaged property was sold under the decree, including the charter, and the purchasers at the sale organized under the charter, and called the new company the Memphis and Little Rock Railroad Company, as reorganized. On May 1 and 2, 1877, the said last-named company issued bonds and executed to the defendants its mortgage upon its property and charter, and, default having been made in their payment, the defendants are in possession as trustees for the mortgage bondholders.

"The legal right of the successive companies to organize under the old charter is not admitted.

"The railroad was built, prior to 1868, from Memphis to Madison and from Little Rock to Du Vall's Bluff. It was built through the intervening distance in 1869. The expense of constructing the Memphis and Little Rock Railroad was $4,000,000, and the railroad company has a bonded indebtedness of $2,850,000, bearing interest at eight per cent per annum; and the defendants are in possession as the representatives of the mortgage bondholders, default having been made in the payment of interest on the bonds. The net income of the road for the year 1886 was $162,000, earned principally from passenger traffic, the charge for transportation having been five cents per mile; and this has been about the average for recent past years. With the same traffic that the road has now, and charging for transportation at the rate of three cents per mile, the net income will only be $58,000, which will pay less than one and one-half per cent on the cost of the road, and only a little over two per cent on its bonded indebtedness. The defendants do not anticipate any increase of traffic on account of the reduction, for the reason that the St. Louis, Iron Mountain and Southern Railway, from which the Memphis and Little Rock Railroad derives nearly all of its through business, is building a parallel branch from Bald Knob in the State of Arkansas to the city of Memphis, and, being a hostile and rival line to that of these defendants, will carry over that branch the through passengers who would otherwise go over the road of the defendants. The most profitable traffic has been the through traffic, and the defendants anticipate a great diminution in their present traffic when said branch is completed, and it will, to all appearances, be completed during the summer of 1887.

"The length of the defendant's road is one hundred and thirty-five miles. Forty miles of that distance, from Madison to Memphis, is through a swamp in which there are virtually no inhabitants and which is subject to overflow.

"Either party may refer to the statements in reference to the railroads in Arkansas contained in Poor's Railroad Manual for 1886, and the same shall be taken as evidence of the facts therein stated.

" The cost of constructing the Batesville and Brinkley Railroad from Brinkley to Newport, a distance of sixty miles, has been $375,000. Its rate of transportation before the act of 1887 was five cents per mile. Its length is sixty miles. The Arkansas and Louisiana Railroad is twenty-five miles long and its cost is $180,000.

" It is further agreed that in Arkansas money is now and has been for twenty years past lending currently at interest from six to ten per cent per annum."

Some statements in Poor's Railroad Manual for 1886, were introduced in evidence under the agreed statement of facts, and are copied in the margin.[1] No other evidence was introduced. The court, therefore, found the facts to be as above agreed and as shown in the extracts from Poor's Manual.

The defendants asked the court to make the following declarations of law:

" First. The act of the General Assembly of the State of Arkansas, approved April 4, 1887, in so far as it relates to the present proceeding, is unconstitutional, null and void, because, under the guise of regulating charges for the carriage of passengers on railroads, it amounts virtually to the confiscation of the property of the railroad in the hands of said defendants,

---

[1] Net earnings of Batesville and Brinkley Railroad for 1885, $29,163.25.

Net earnings of the Arkansas and Louisiana Railroad for 1855, $34,429.88.

Length of St. Louis, Iron Mountain and Southern Railway, 923 miles. Mortgaged for $35,564,352.61; 5, 7, and 8 per cent. Net earnings, $3,619,416.63. Rate of charges has been three cents per mile.

Length of the Little Rock and Fort Smith Railroad, 165 miles. Mortgaged for $2,379,500; 7 per cent. Net profits, $225,910.31. Rate of charges has been five cents per mile.

Length of the Little Rock, Mississippi River and Texas Railway, 162 miles. Mortgaged for $2,977,500; 7 per cent. Net earnings, $99,604.44. Rate of charges has been five cents per mile.

Length of the St. Louis, Arkansas and Texas Railway, 735.21 miles. Mortgaged for $18,375,000; 6 per cent. Net earnings, $67,644.30.

Length of St. Louis and San Francisco Railroad, 814.88 miles. Mortgaged for $26,026,000. Net earnings, $2,573,772.70.

Length of Kansas City, Springfield and Memphis Railway, 281.94 miles. Mortgaged for $7,800,000; 6 per cent. Net earnings, $365,160.88.

and is an unreasonable, unjust, and oppressive taking of private property for public uses without compensation in violation of the Constitution of the State of Arkansas and that of the United States.

"Second. The said act of the General Assembly is unconstitutional, because it is special legislation and makes arbitrary discriminations between different railroads, not based either upon their value, their earnings, or other valid grounds, but based simply on the respective lengths of the several railroads."

The court refused to make either of those declarations of law, and gave judgment for the plaintiff for a penalty of fifty dollars and a counsel fee of twenty-five dollars. The defendants excepted to the refusal, and appealed to the Supreme Court of the State, which affirmed the judgment.

The defendants sued out this writ of error, and assigned for error that the court erred in holding that the statute of Arkansas of April 4, 1887, was not repugnant to the clause of the Fourteenth Amendment to the Constitution of the United States which provides that no State shall deprive any person of life, liberty or property, without due process of law; and in holding that that statute was not repugnant to the clause of that Amendment which declares that no State shall deny to any person within its jurisdiction the equal protection of the laws.

*Mr. U. M. Rose* for plaintiff in error cited : Constitution of Arkansas, 1874, Art. xii, § 6 ; Art. xix, § 13 ; *Railroad Commission Cases*, 116 U. S. 307, 331 ; *Ex parte Koehler*, 23 Fed. Rep. 529 ; Cooley Const. Lim. 578 ; *Miller* v. *New York & Erie Railroad Co.*, 21 Barb. 513, 519 ; 2 Morawetz Corp. § 1075 ; *Holyoke Co.* v. *Lyman*, 15 Wall. 500 ; *United States* v. *Cruikshank*, 92 U. S. 542, 555 ; *Missouri* v. *Lewis*, 101 U. S. 22, 31 ; *Barbier* v. *Connolly*, 113 U. S. 27 ; *Yick Wo* v. *Hopkins*, 118 U. S. 356, 368 ; *Chicago, Burlington &c. Railroad* v. *Quincy*, 94 U. S. 155 ; *Van Riper* v. *Parsons*, 40 N. J. L. 1 ; *Freeholders* v. *Stevenson*, 46 N. J. L. 173 ; *Gibbs* v. *Morgan*, 39 N. J. Eq. 126 ; *Ernst* v. *Morgan*, 39 N. J. Eq. 391 ; *Wood ard* v. *Brien*, 14 Lea, 520 ; *Smith* v. *Warden*, 80 Ky. 608;

*State* v. *Herrmann*, 75 Missouri, 340; *Commonwealth* v. *Patton*, 88 Penn. St. 258; *Devine* v. *Commissioners*, 84 Ill. 590; *County of Dougherty* v. *Boyt*, 71 Georgia, 484.

*Mr. John H. Rogers* for defendant in error cited: *Memphis & Little Rock Railroad Co.* v. *Railroad Commissioners*, 112 U. S. 609; *McCulloch* v. *Maryland*, 4 Wheat. 316; Constitution Ark. 1874, Art. xvii, § 10; *Stone* v. *Wisconsin*, 94 U. S. 181; *Munn* v. *Illinois*, 94 U. S. 113; *Chicago, Burlington &c. Railroad* v. *Iowa*, 94 U. S. 155; *Devine* v. *Commissioners*, 84 Illinois, 590; 1 Rev. Stat. Missouri, 1879, 146; Howell's Ann. Stat. Mich. 1882, p. 840, § 3323, sub. secs. 7 and 9; Laws of Penn. 1876, No. 87, p. 116; Hittell's Code and Statutes of California, § 5489; Comp. Laws of Kansas, 1879, p. 225, § 57; Acts of Wisconsin, 1874, p. 600, § 4; *Wheeler* v. *Philadelphia*, 77 Penn. St. 338; *Kilgore* v. *Magee*, 85 Penn. St. 401: *Morrison* v. *Bachert*, 112 Penn. St. 322; *Davis* v. *Clark*. 106 Penn. St. 377; *Van Riper* v. *Parsons*, 40 N. J. L. 1.

MR. JUSTICE GRAY delivered the opinion of the court.

The general rule of law that governs this case has been clearly stated and developed in opinions of this court, delivered by the late Chief Justice.

In *Munn* v. *Illinois*, 94 U. S. 113, decided at October Term, 1876, after affirming the doctrine that by the common law carriers or other persons exercising a public employment could not charge more than a reasonable compensation for their services, and that it is within the power of the legislature "to declare what shall be a reasonable compensation for such services, or, perhaps more properly speaking, to fix a maximum beyond which any charge made would be unreasonable," the Chief Justice said: "To limit the rate of charges for services rendered in a public employment, or for the use of property in which the public has an interest, is only changing a regulation which existed before. It establishes no new principle in the law, but only gives a new effect to an old one." 94 U. S. 133, 134.

In *Chicago, Burlington & Quincy Railroad* v. *Iowa*, 94

U. S. 155, decided at the same time, a corporation having a perpetual lease of the railroad of another organized under the general corporation law of Iowa of 1851, c. 43, with the same powers as private individuals to make contracts, as well as the power to establish by-laws and make all rules and regulations deemed expedient for the management of its affairs, in accordance with law, was held to be bound by the subsequent statute of Iowa of 1874, c. 68, entitled "An act to establish reasonable maximum rates of charges for transportation of freight and passengers on the different railroads of this state," by which those railroads were classified according to the gross amount of their earnings per mile for the preceding year; and the compensation per mile, which those of each class might receive for the transportation of a passenger with ordinary baggage, was limited to three cents, three cents and a half, and four cents, respectively. Iowa Laws of 1874, p. 61. The Chief Justice said : " Railroad companies are carriers for hire. They are incorporated as such, and given extraordinary powers, in order that they may better serve the public in that capacity. They are, therefore, engaged in a public employment affecting the public interest, and, under the decision in *Munn* v. *Illinois*, 94 U. S. 113, subject to legislative control as to their rates of fare and freight, unless protected by their charters." "This company, in the transactions of its business, has the same rights, and is subject to the same control, as private individuals under the same circumstances. It must carry when called upon to do so, and can charge only a reasonable sum for the carriage. In the absence of any legislative regulation upon the subject, the courts must decide for it, as they do for private persons, when controversies arise, what is reasonable. But when the legislature steps in and prescribes a maximum of charge, it operates upon this corporation the same as it does upon individuals engaged in a similar business." 94 U. S. 161, 162.

The same rule was affirmed and acted on in several other cases decided at the same time, in the first of which the Chief Justice, in answering " the claim that the courts must decide what is reasonable, and not the legislature," said : " Where

property has been clothed with a public interest, the legisla-ture may fix a limit to that which in law shall be reasonable for its use. This limits the courts, as well as the people. If it has been improperly fixed, the legislature, not the courts, must be appealed to for the change." *Peik* v. *Chicago & North-western Railway*, 94 U. S. 164, 178; *Chicago, Milwaukee & St. Paul Railroad* v. *Ackley*, 94 U. S. 179; *Winona & St. Peter Railroad* v. *Blake*, 94 U. S. 180; *Stone* v. *Wisconsin*, 94 U. S. 181.

Upon like grounds, in *Ruggles* v. *Illinois*, 108 U. S. 526, and *Illinois Central Railroad* v. *Illinois*, 108 U. S. 541, decided at October Term, 1882, the statute of Illinois of April 15, 1871, (Illinois Laws of 1871, p. 640,) which classified the railroads in the State according to their gross annual earnings per mile, and put different limits on the compensation of the different classes per mile for carrying a passenger and his baggage, was adjudged, in opinions delivered by the Chief Justice, to be constitutional and valid, in restricting to the limit of three cents a mile existing corporations, whose charters gave them power to make all by-laws, rules and regulations not repug-nant to law, and gave their directors power to establish such rates of toll as they should by their by-laws determine. And two Justices who did not assent to those opinions concurred in the judgments, because it was not shown that the rate pre-scribed by the legislature was unreasonable.

In *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S. 307, de-cided at October Term, 1885, the obligation of a contract, cre-ated by a charter granting similar powers to a railroad cor-poration and its directors, was held not to be impaired by a statute of Mississippi, establishing a board of railroad commis-sioners charged with the duty of preventing the exaction of unreasonable or discriminating rates upon transportation done within the limits of the State; and the Chief Justice said: "It is now settled in this court that a State has power to limit the amount of charges by railroad companies for the transpor-tation of persons and property within its own jurisdiction, unless restrained by some contract in the charter, or unless what is done amounts to a regulation of foreign or interstate

commerce." 116 U. S. 325. He added, however: "From what has thus been said it is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy; and limitation is not the equivalent of confiscation. Under pretence of regulating fares and freights, the State cannot require a railroad company to carry persons and property without reward; neither can it do that which in law amounts to a taking of private property for public use, without just compensation, or without due process of law." 116 U. S. 331. The opinions of the two dissenting Justices were grounded upon the provisions of the charter, and upon its not having been expressly made subject to alteration or repeal by the legislature. The cases, decided at the same time, of *Stone* v. *Illinois Central Railroad*, 116 U. S. 347, and *Stone* v. *New Orleans & Northeastern Railroad*, 116 U. S. 352, were substantially similar.

As applied to freights and fares for transportation not extending beyond the limits of the State by which the railroad company is incorporated, the authority of the legislature is not affected by the later decision in *Wabash, St. Louis & Pacific Railway* v. *Illinois*, 118 U. S. 557.

The case at bar is quite clear of any of the questions upon which the members of the court have heretofore differed in opinion.

If the Memphis and Little Rock Railroad Company, as reorganized by the purchasers at the sale under the decree of foreclosure of the previous mortgages, was a lawful corporation of the State of Arkansas, it was not the same corporation as that chartered by the legislature in 1853, but was a new corporation, subject to the provisions of the Constitution and laws in force when it first came into existence, that is to say, in 1877. *Memphis & Little Rock Railroad* v. *Railroad Commissioners*, 112 U. S. 609.

The Constitution of Arkansas of 1874 contains the following provisions:

"Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The general assembly shall have power to alter, revoke or annul

any charter of incorporation now existing and revocable at the adoption of this constitution, or that may be hereafter created, whenever, in their opinion, it may be injurious to the citizens of the State, in such manner, however, that no injustice shall be done to the corporators. Art. 12, § 6.

"The general assembly shall pass laws to correct abuses and prevent unjust discrimination and excessive charges by railroad, canal and turnpike companies, for transporting freight and passengers, and shall provide for enforcing such laws by adequate penalties and forfeitures." Art. 17, § 10.

The legislature of Arkansas, by the statute of April 4, 1887, fixed the maximum fare that any corporation, trustees, or persons, operating a line of railroad, might charge and collect for carrying a passenger within the State, at eight cents a mile on a line fifteen miles long or less, five cents a mile on a line more than fifteen and less than seventy-five miles long, and three cents a mile on a line more than seventy-five miles long. The line of the road of the plaintiffs in error is more than seventy-five miles long, and they charged more than three cents a mile, and were therefore held to be subject to the penalty imposed by the statute for any violation of its provisions.

The plaintiffs in error do not contend that it is always or generally unreasonable to restrict the rate for carrying each passenger to three cents a mile. They argue that it is so in this case, by reason of the admitted fact, that with the same traffic that their road has now, and charging for transportation at the rate of three cents per mile, the net yearly income will pay less than one and a half per cent on the original cost of the road, and only a little more than two per cent on the amount of its bonded debt. But there is no evidence whatever as to how much money the bonds cost, or as to the amount of the capital stock of the corporation as reorganized, or as to the sum paid for the road by that corporation or its trustees. It certainly cannot be presumed that the price paid at the sale under the decree of foreclosure equalled the original cost of the road, or the amount of outstanding bonded debt. Without any proof of the sum invested by the reorganized corporation or its trustees, the court has no means, if

it would under any circumstances have the power, of determining that the rate of three cents a mile fixed by the legislature is unreasonable. Still less does it appear that there has been any such confiscation, as amounts to a taking of property without due process of law.

It is equally clear that the plaintiffs in error have not been denied the equal protection of the laws.

The legislature, in the exercise of its power of regulating fares and freights, may classify the railroads according to the amount of the business which they have done or appear likely to do. Whether the classification shall be according to the amount of passengers and freight carried, or of gross or net earnings, during a previous year, or according to the simpler and more constant test of the length of the line of the railroad, is a matter within the discretion of the legislature. If the same rule is applied to all railroads of the same class, there is no violation of the constitutional provision securing to all the equal protection of the laws.

A similar question was presented and decided in *Chicago, Burlington & Quincy Railroad* v. *Iowa*, above cited. It was there objected that a statute regulating the rate for the carriage of passengers, by different classes of railroads, according to their gross earnings per mile, was in conflict with art. 1, sec. 4, of the Constitution of Iowa, which provides that "all laws of a general nature shall have a uniform operation," and "the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which upon the same terms shall not equally belong to all citizens." In answering that objection, the Chief Justice said: "The statute divides the railroads of the State into classes, according to business, and establishes a maximum of rates for each of the classes. It operates uniformly on each class, and this is all the Constitution requires." "It is very clear that a uniform rate of charges for all railroad companies in the State might operate unjustly upon some. It was proper, therefore, to provide in some way for an adaptation of the rates to the circumstances of the different roads; and the general assembly, in the exercise of its legislative discretion, has seen fit to do this by a system

of classification. Whether this was the best that could have been done is not for us to decide. Our province is only to determine whether it could be done at all, and under any circumstances. If it could, the legislature must decide for itself, subject to no control from us, whether the common good requires that it should be done." 94 U. S. 163, 164.

*Judgment affirmed.*