THE CITY OF JACKSONVILLE, A MUNICIPALITY UNDER THE LAWS OF THE STATE OF FLORIDA, *Appellant,* v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, A CORPORATION UNDER THE LAWS OF THE STATE OF NEW YORK, *Appellee.*

1. The Charter of the City of Jacksonville contains the following provisions, *viz*: "The Mayor and City Council of the City of Jacksonville are hereby authorized by ordinance to regu-

late, require and provide for the opening, grading, paving, improving and repairing of any and all streets, and to require the owner of lots fronting or abutting thereon or contiguous thereto and specially benefitted thereby to do such work, or to pay the cost thereof, or to pay such part of the cost thereof as may be fixed by ordinance," "to pass all ordinances necessary for the health, convenience and safety of the citizens, and to carry out the full intent and meaning of this act, and to accomplish the objects of this incorporation." A telephone company was operating in said city under an ordinance which contained no condition or provision fixing maximum telephone rates or reserving the power in the city to fix such rates: *Held,* that under these circumstances the city had no power or authority to pass or enforce an ordinance, subsequent to the one under which the telephone company was operating and using the streets of the city fixing maximum rates to be charged by said telephone company.

2. The principles enounced in the case of Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 South. Rep. 677, reaffirmed and applied.

3 Chapter 4052 Laws of 1891 (section 1024 General Statutes of 1906) confers upon municipalities the power to forfeit the franchises, etc., of any street railroad, gas, electric light plant, telephone or other company or corporation, under which such company or corporation is using the streets, etc., upon the violation of the terms and conditions of the grant of such privileges, etc., or upon failure to comply with any reasonable provision of any ordinance of such municipal corporation regulating the use of the streets by such company or corporation, etc.; but these provisions do not confer upon a municipality the implied power to fix maximum telephone rates to be charged by a telephone company using the streets under an ordinance which contains no reservation of the right to fix such rates.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*Cockrell & Cockrell* and *J. M. Barrs,* for Appellant;

*Jno. E. Hartridge* and *Hunt Chipley,* for Appellee.

HOCKER, J.—Appellee, a corporation, operating and maintaining a telephone exchange business in the city of Jacksonville since 1890, on the first day of February, 1909, file a bill in the Circuit Court of Duval county against appellant praying an injunction against the enforcement of a certain ordinance known as "ordinance No. J-57, being Bill No. J-103,entitled an ordinance regulating and fixing maximum rates to be charged by telephone companies using the streets of the City of Jacksonville, Fla., and prescribing a penalty for the violation thereof," passed January 25, 1909, and approved January 26, 1909. The ordinance is in the following words and figures:

"Ordinance No. J-57.

Bill No. J-103.

An Ordinance Regulating and Fixing Maximum Rates to be charged by Telephone Companies Using the Streets of the City of Jacksonville, Fla., and Prescribing a Penalty for the Violation Thereof.

Be it Ordained by the Mayor and City Council of the City of Jacksonville:

Section 1. That from and after the passage of this Ordinance it shall be unlawful for any telephone company using the streets of the City of Jacksonville, Fla., for its wires, poles or otherwise, under a franchise from the City of Jacksonville, Fla., to charge, collect, or receive, for the use of any telephone, operated or maintained by such company, any rate, fee, compensation or payment for the use of such telephone and the line service incident thereto in excess of the rate prescribed in the following schedule, to wit: For single telephone with in-

VOL. 57, JANUARY TERM, 1909.    377

City of Jacksonville v. Sou. Bell Tel. & Tel. Co.—Opinion of Court.

dividual service in any business office or place of business, per month, $4.00.   For single telephone, with individual service in any residence or private dwelling, per month, $2.00.

The foregoing rate shall not apply to two or more persons having a joint telephone, nor where more than one telephone is used in the same place.

Sec. 2.   Any person, firm, association or corporation violating the provisions of this Ordinance shall be fined by exceeding Five Hundred Dollars or imprisonment not exceeding three months.

Sec. 3.   That any charge, collection or receipt of money in excess of the rate hereby fixed as to each telephone shall be a separate offense hereunder and punishable as such.

Pass January 25, 1909.

Approved January 26, 1909.

> W. H. Sebring, Mayor.
>
> G. D. Acklerly, Recorder.

Attest:    (Seal).

Published January 26, 1909."

The bill contains sufficient allegations to present for adjudication the question whether the City of Jacksonville has power and authority under the charter to pass and enforce this ordinance prescribing maximum rates for the use of telephones operated by the appellee, and that is the only question we are called upon to adjudicate

Upon a hearing the Circuit Judge granted the appellee a temporary injunction, and the case is here on appeal from this order.

It is not contended by the appellant that the special charter of the City of Jacksonville gives it in express terms the power to prescribe the maximum rates set forth in the said ordinance for the use of telephones. We are requested to determine whether or not the power

may be implied from the powers conferred upon the city in some one of the several acts of the Legislature which constitute the Special Charter of said city, or from some power which has been conferred upon cities by the general law. Our attention is called to the following language from section 4, Article 3 of Chapter 3775, Laws of 1887, incorporating the city, *viz*: "To pass all ordinances necessary for the health, convenience and safety of the citizens, and to carry out the full intent and meaning of this act and to accomplish the objects of this incorporation;" and also the following language of section 2, Chapter 4871, Laws of 1899, *viz*: "The mayor and city council of the City of Jacksonville are hereby authorized, by ordinance, to regulate, require and provide for the opening, grading, paving, improving and repairing of any and all streets, and to require the owner of lots fronting or abutting thereon or contiguous thereto and specially benefitted thereby to do such work, or to pay the cost thereof, or to pay such part of the cost as may be fixed by ordinance, Provided, " &c. The case of Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 South. Rep. 677, is cited as warranting the implication of the power to pass the ordinance in question. In that case the whole subject of implied powers in municipal corporations is thoroughly discussed in both the arguments of counsel and the decision of the court. In that case the question presented was whether the city of Jacksonville had the power to erect and maintain an electric plant to light the streets and public places of the city, and to supply electric lights to the inhabitants for their private residences and business houses. . The Charter of the city expressly gave it the power "to provide for lighting the city by gas or other illuminating material, or in any other manner," besides a large number of other specific powers intended to be exercised for the benefit

of the city and its citizens.    It was not contended in this court that the city could not erect and maintain at public cost an electric plant to light the streets and public places of the city, but that it had no power to erect and maintain a plant of sufficient power and capacity for the additional purpose of supplying the inhabitants of the city with electric light for use in their private residences and houses.    The court stated the law to be :

"1.    A municipal corporation can exercise only such powers as are granted to, it in express terms, or those necessarily or fairly implied in or incident to the powers expressly granted, or those that are essential and indispensable, not simply convenient to the declared objects and purposes of the corporation.    Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation.

2.    While a strict construction should be applied to the grant of powers, and especially those which result in public burdens, or which are out of the usual range of corporate action, yet if a power is fairly or necessarily implied in or incident to those clearly given, is should not be impaired by a strict construction.

3.    All the powers conferred upon a municipal corporation should be construed with a view of carrying out the objects and purposes of its creation as a public agency.

4.    Supplying the inhabitants of a city with electric light for use in their private residences and houses is such a municipal purpose as to authorize its delegation by the Legislature to municipal bodies."

Applying the foregoing principles the court held that the power conferred upon the city to provide for lighting the city by gas or other illuminating material or in any other manner in connection with other specified powers was sufficient to authorize the erection and maintenance

at public cost of an electric plant of sufficient power and capacity to light not only the streets and public places in the corporation, but also for the purpose of supplying the inhabitants of the city with electric light for use in their private residences and houses. The principles enunciated in this case meet with general approbation in the authorities. Galloway v. Town of Tavares, 37 Fla. 58, 19 South. Rep. 170; State ex rel. v. Lewis, 55 Fla. 570, 46 South. Rep. 630; Hardee v. Brown, 56 Fla. 377, 47 South. Rep. 834; State v. Tampa Waterworks Co. 56 Fla. 858, 47 South. Rep. 358.

The case of Charles Simon's Son's Company v. Maryland Telephone & Telegraph Company, 99 Md. 141, 57 Atl. Rep. 193, 63 L. R. A. 727, is cited to sustain the ordinance here involved. The opinion in that case is a long and instructive one. A bill was filed by the appellants to enforce the provisions of an ordinance of the City of Baltimore under which the defendant Telegraph and Telephone Company was doing a telephone business in said city. The telephone company was granted permission by the city to use the streets and public places of the city for its lines of wire, electrical conductors, &c., subject to the condition that the prices to be charged for telephone service were not to exceed certain mentioned rates, accepted the terms of the ordinance embodying this condition and was operating thereunder. The court held: "The duty to furnish service at specified rates may be imposed by a municipal corporation having statutory authority to regulate the use of its streets for telephone wires as a condition to the use of such streets by a telephone company;" and also, "A telephone company which accepts the condition as to rates to be charged by it, imposed by a municipal corporation as a condition to its use of the streets for its conduits, cannot complain that the rates are not reasonable."

The ordinances under which the appellee was operating in the City of Jacksonville adopted some years before the date of the one in question contain conditions that appellee shall at all times be subject to the city ordinances now in existence, or which may be passed hereafter, relative to the use of the public streets, roads, and highways by telephone and telegraph companies, but we can discover no condition or provision therein fixing maximum telephone rates, or reserving the power to fix such rates. This Maryland case is, therefore, not analogous to the one at bar. Some authorities go to the extent of holding that a municipal corporation, neither under the power to regulate the use of its streets, nor under the general welfare clause of its charter giving it authority to pass all such ordinances, not inconsistent with the provisions of the charter or laws of the State as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade and manufactures, has the power to regulate the charges for telephone service. The City of St. Louis v. Bell Tel. Co., 96 Mo. 623, 10 S. W. Rep. 197; McQuillin on Municipal Ordinances, §586; Keasbey on Electric Wires (2nd ed.) §§51 and 52; Joyce on Electric Law (2nd ed.) §525; State ex rel. The Wisconsin Tel. Co. v. City of Sheboygan, 111 Wis. 23, 86 N. W. Rep. 657. The latter opinion seems to go to the extent of holding that a municipal corporation, under the power in its charter to regulate the use of the streets, and a general welfare clause has no power to fix maximum telephone rates as a condition to the use of the streets. We are not required to go to the extent of this and other decisions in deciding the instant case.

It is also suggested on the part of appellant that the power to pass the ordinance in question may be implied from the terms of Chapter 4052 Laws of 1891 (Section 1024 General Statutes of 1906). The act, however,

as is clearly shown by its title and the language of the act itself, was only intended to confer upon municipal corporations the power to forfeit the franchises, privileges, &c., of any street railroad, gas, electric light, telephone or other company or corporation under which such company or corporation was using the streets for its wires, poles, &c., upon the violation of the terms and conditions of the grant of such privileges and franchises or upon failure to comply with any reasonable provision of any ordinance of such municipal corporation regulating the use of the streets by such company or corporation for a period of five days after notice to desist from such violation, &c. The power to forfeit for failure to comply with the terms of the grant, or for failure to comply with the reasonable provisions of any ordinance regulating the use of the streets, does not, we think, carry with it the implied power to fix maximum rates for telephones. Such a power it seems to us is clearly outside of the purview of that act. We can discover no other statute from which the power to pass the ordinances be implied.

We feel constrained to hold in the light of the doctrines enounced in Jacksonville Electric Light Co. v. City of Jacksonville, *supra,* Galloway v. Town of Tavares, *supra,* and other decisions of this court, as well as the other authorities cited, that there is at least a "fair and reasonable doubt" concerning the existence of the power in the City of Jacksonville to adopt the ordinance in question, and therefore the order appealed from must be, and is hereby, affirmed.

All concur.