## CITY OF WINCHESTER ET AL. *v.* WINCHESTER WATER WORKS COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 51.   Argued October 24, 1919.—Decided January 5, 1920.

A city cannot regulate the rates chargeable by a water company unless
authority to do so has been plainly granted by the legislature.
P. 193.

Such authority cannot be implied from powers to grant water com-
panies rights of way in the public streets and grounds and to super-
vise and control their use.   P. 194.

Kentucky Statutes, § 3490 (8), (25), (30), (33), considered.   *Id.*

Affirmed.

THE case is stated in the opinion.

Mr. J. Smith Hays, with whom Mr. J. Smith Hays, Jr.,
Mr. John M. Stevenson, Mr. James F. Winn and Mr. F. H.
Haggard were on the brief, for appellants.

*Mr. Beverley R. Jouett,* with whom *Mr. James M. Benton* and *Mr. Stephen T. Davis* were on the brief, for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

The Winchester Water Works Company filed its bill in the United States District Court for the Eastern District of Kentucky seeking to enjoin the enforcement of an ordinance establishing maximum rates for water to be furnished the city for public use and to the people thereof for private use. By the bill and amended bill it was charged that the city had no authority to pass or enforce an ordinance fixing such rates, because (1) no power had been granted to the city so to do by the legislature of Kentucky; (2) because the rates established were so low as to be confiscatory in their character, and, consequently, the ordinance was violative of rights secured to the company by the Fourteenth Amendment to the Federal Constitution. An answer was filed, and the court decided the case and made a final decree in favor of the company upon the ground that under the laws of Kentucky the city had no authority to pass or enforce an ordinance fixing rates. The court found it unnecessary to pass upon the question of the confiscatory character of the rates. The bill invoked jurisdiction upon a constitutional ground, and the case was brought here by direct appeal.

It appears that the company had a contract with the city, which expired in 1916, and thereafter the ordinance in controversy was passed. That a city has no power to regulate rates of this character unless it has legislative authority so to do is established, and does not seem to be disputed by the appellants. "Independently of a right to regulate and control the rates to be charged for public service reserved in a grant of a franchise or right to use the city streets, a city or other municipality has no power to regulate the rates to be charged by water, lighting, or

other public service corporations in the absence of express or plain legislative authority to do so." 3 Dillon on Municipal Corporations, 5th ed., § 1325. Nor does such authority arise from the power to regulate the opening and use of streets, nor a grant of the general right to control and regulate the right to erect works and lay pipes in the streets of the city. *State* v. *Missouri & K. Telephone Co.*, 189 Missouri, 83; *Jacksonville* v. *Southern Bell Tel. Co.*, 57 Florida, 374; *Lewisville Natural Gas Co.* v. *State*, 135 Indiana, 49; *Mills* v. *Chicago*, 127 Fed. Rep. 731; *State* v. *Sheboygan*, 111 Wisconsin, 23.

Bearing this general principle in mind, we come to examine the sections of the laws of Kentucky which, it is insisted, give the authority to fix water rates. The appellants insist that this power is expressly conferred in subsection 25 of § 3490 of the Kentucky Statutes, which reads as follows: "The board of council may grant the right of way over the public streets or public grounds of the city to any railroad company or street railroad company, on such conditions as to them may seem proper, and shall have a supervising control over the use of same, and shall regulate the speed of cars and signals and fare on street cars; and under like condition and supervision may grant the right of way that may be necessary to gas companies, water companies, electric light companies, telephone companies, or any like companies; and may compel any railroad company to erect and maintain gates at any or all street crossings, and to prevent railways from blocking or obstructing the streets or public ways of the city, and to fix penalties for the violation of these provisions: *Provided*, etc."

Other subsections claimed to be applicable are given in the margin.[1]

---

[1] Kentucky Statutes:

"3490. The board of council, in addition to other powers herein granted, shall have power within the city:   .   .   .

Examining subsection 25, we are unable to discover any grant of authority to fix the rates for water consumption. It is therein first provided that the council may grant the right-of-way over the public streets to any railroad or street railroad company on such conditions as to the council may seem proper, and shall have a supervising control over the use of the same, and the council is given the right to regulate the speed of cars and signals and fare on street cars, and under like conditions and supervision, the council may grant the right-of-way to water companies among others. This language is certainly very far from that express authority to regulate rates, which is essential in order to enable municipalities so to do. The power to grant a right-of-way to water companies is specifically granted, and this under like conditions and supervision already provided as to railroad and street

---

"(8) To provide the city with water, or erect, purchase, or lease water-works and maintain same, or to make all necessary contracts with any person or corporation for such purposes; to erect hydrants, cisterns, fire-plugs and pumps in the streets within or beyond the limits of the city. . . .

"(30) The board of council shall have power, by ordinance, to prescribe the punishment, by fine, not exceeding $100, or imprisonment not exceeding 60 days, of any person who shall molest, damage or interfere with any system of water-works laid in said city, or the pipes and mains, hydrants, or any part thereof, and shall have power to punish by ordinance and impose the same penalty as for damaging or molesting any other public property; and may, subject to the rules of any water company which may establish such system, select persons who shall have the right to open, tap or make connection with such pipes or mains in the streets, alleys, or public ways of said city. . . .

"(33) Said city council shall have legislative power to make by-laws and ordinances for the carrying into effect of all of the powers herein granted for the government of the city, and to do all things properly belonging to the police of incorporated cities. Said board of council may change the boundary line of any ward or wards of any city now divided into wards, or hereafter divided into wards, under the provision of this act, not less than sixty days previous to any November election."

railroad companies. This is the full measure of the grant
of authority to deal with water companies. The right to
regulate fares is in the same sentence which grants au-
thority to deal with water companies, and is specifically
limited to fares on street cars.

Nor do we find in other subsections of this section any
provision from which the right to fix the rates of water
companies can be inferentially deduced.

Counsel call to our attention but one case from Ken-
tucky, whose court of last resort is final authority upon
the construction of the statutes, and that is *United Fuel &
Gas Co. v. Commonwealth*, 159 Kentucky, 34. There the
United Fuel and Gas Company held a franchise from a
city in Kentucky under an ordinance providing that the
grantee of the franchise should furnish for public and
private use for the city and its inhabitants natural and
artificial gas at a reasonable price not exceeding in any
event one dollar per one thousand cubic feet, and that the
grantee in delivering gas should not discriminate against
the consumers in the city. The company proposed to
sell gas to the inhabitants of the city at 20 cents per thou-
sand feet if they would sign a contract for five years,
but it charged persons who did not sign such a contract
25 cents a thousand feet. The city council passed an
ordinance providing that a gas company should not
charge one citizen more than another, and imposed a
fine for violation of the ordinance. The city was of the
fifth class, and was given authority to make "all other
local, police, sanitary and other regulations as do not
conflict with general laws." The court held that the
act for the government of this city of the fifth class must
be read in connection with the statutes conferring power
on larger cities, and, that thus construed, there was no
grant of authority to the city to impose a fine such as the
one in question in the absence of legislative authority so
to do. The section from Dillon on Municipal Corpora-

tions, stating that the authority of a municipality to regulate rates to be charged by public service corporations is limited to cases in which express or plain legislative authority has been given was quoted with approval. Cases from other States in which the principle has been approved were also cited.

It is true that this case is not precisely in point, but it contains a recognition by the Court of Appeals of Kentucky of the accepted principle that the right to fix rates must be granted to municipal corporations by a plain expression of legislative authority. It is said, however, that our decision in *Owensboro* v. *Owensboro Waterworks Co.*, 191 U. S. 358, holds a contrary view. So far as apposite that case dealt with the power of a city of the third class to fix rates for water consumers. As to cities of that class, § 3290 of the Kentucky Statutes specifically provides authority to provide the city and inhabitants thereof with water, light, etc., service by contract or by works of its own, and to make regulations for the management thereof, and to fix and regulate the price to consumers and customers. Dealing with that section, and the authority conferred upon cities of the third class, this court said: "The purpose of section 3290 was to provide the inhabitants of cities of the third class with the services mentioned—water, light, power, heat and telephone. They could be provided by the cities directly or they could be provided by private persons; but whatever way provided, the power was given to regulate the management and fix the rates of the services, and this was but the endowment of a common governmental power."

This language was used in regard to the authority given in express terms to fix rates. It was said of such authority that it was but the endowment of a common governmental power. This is undoubtedly true. But it is equally certain that the governmental power rests with the State, and must be conferred upon the municipality

in an unmistakable way. · We find nothing in the *Owensboro Case* which at all conflicts with the construction which we have given to § 3490, applicable to cities of the fourth class to which the City of Winchester belongs.

Finding no error in the judgment of the District Court, the same is

· *Affirmed.*