## ALASKA ELECTRIC LIGHT & POWER CO. v. CITY OF JUNEAU, ALASKA, et al.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1924. Rehearing Denied February 11, 1924.)

No. 4044.

1. **Municipal corporations ⬦⇒593—Alaska municipality held without power to fix electric light rates for definite term.**

   Act April 28, 1904, giving municipal corporations in Alaska authority to provide for fire protection, water supply, and lighting, carried with it power to grant a franchise to an electric company, but did not confer power on a municipality to enter into a binding contract fixing rates, which should remain in effect during the life of the franchise.

2. **Municipal corporations ⬦⇒593—Power to establish rates by contract for a public service must be clearly delegated.**

   The right of a municipality to fix rates for a public service by contract, to remain unchanged for a definite term, can only vest on power unmistakably delegated to it by legislative authority. ·

3. **Electricity ⬦⇒11—Statute authorizing fixing and changing of rates applicable to existing franchise.**

   Sess. Laws Alaska 1919, c. 50, authorizing cities to establish reasonable rates for public service corporations and to change the same, applies to rates chargeable under an existing electric franchise.

Appeal from the District Court of the United States for the District of Alaska, Division No. 1; Thomas M. Reed, Judge.

Suit in equity by the Alaska Electric Light & Power Company against the City of Juneau, Alaska, and others. Decree for defendants, and complainant appeals. Affirmed.

The appellant brought a suit against the appellees to enjoin the enforcement of an ordinance adopted by the common council of the city of Juneau on September 15, 1922, fixing the maximum rates chargeable by the appellant for electric light and power service. The appellant, prior to the passage of the

⬦⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Act of Congress of March 3, 1903, 32 Stat. 947, authorizing the formation of domestic corporations in the territory of Alaska, had formed an association for the purpose of furnishing electric light, heat, and power to the inhabitants of Juneau. After the passage of that act, the appellant, as a corporation incorporated under the law, continued to furnish electric light and heat. It used the streets of the city by common consent until February 21, 1908, when the common council of the city, by Ordinance No. 93, granted the appellant a franchise to erect poles and stretch wires thereon through the streets and public ways of the city. One section of the ordinance provided "that the rights, privileges and franchises were granted to the company for the period of 50 years." Another section prescribed the maximum rates that might be charged. Still another section provided that the franchise should not deprive the council of the right to pass all appropriate ordinances in the exercise of the police powers of the council. The ordinance was accepted by the appellant. Thirty days later Ordinance No. 95 was passed by the common council, amending the provision of the prior ordinance as to the maximum charges to be made in cases where meters were installed. Under those ordinances the appellant furnished light, heat, and power until 1917, when, in view of its apprehension that the city was about to establish an electric light system of its own, the appellant proposed a reduction of its maximum charges, to be effective from July 1, 1917, to July 1, 1922. The proposal was accepted by the city, and electric service was rendered during the said period of five years under the rates so reduced. At the close of that period the appellant materially increased its rates, claiming its right to do so under its franchise granted by Ordinance No. 93. On September 15, 1922, the city, by Ordinance No. 186, established rates somewhat lower than the rates which were then charged by the appellant. To restrain the enforcement of those rates the present suit was brought. The court below dismissed the complaint.

H. L. Faulkner, of Juneau, Alaska, and Robert W. Jennings, of San Francisco, Cal., for appellant.

J. A. Hellenthal and S. Hellenthal, both of Juneau, Alaska, for appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant, in its complaint, does not assert that the rates ordained by Ordinance No. 186 are unreasonable or confiscatory, but contends that under the provisions of Ordinance No. 93 maximum rates were established for the lifetime of the franchise, that the ordinance and the acceptance thereof constitute a binding contract, and that Ordinance No. 186 is void as depriving it of property without due process of law.

The court below found that the police power to fix rates for service by a public utility might be delegated to a municipal corporation, that there was no delegation of such power until the territorial Legislature enacted Chapter 50 of the Laws of 1919, and that therefore the ordinances of 1908 in establishing maximum rates were null and void, because the power to fix such rates for the period of the franchise rested solely in Congress and had not been delegated.

[1] The Act of Congress of April 28, 1904, 33 Stat. 529, gives to municipal corporations in Alaska, among other powers, the authority to provide for fire protection, water supply, lights, etc. Power granted to a municipality to provide for water supply and lights undoubtedly carries with it the power to grant a franchise to an electric light company for a limited period of time to use the municipal streets for poles and wires and the transmission of electricity, and the fran-

chise, if accepted, becomes binding upon both the city and the company, not to be revoked or repealed, unless the power to repeal has been clearly and unmistakably reserved. Owensboro v. Cumberland Telephone Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389. But this is far from saying that there is necessarily included, in the power to provide lights for a city, the power to enter into a binding contract whereby the rates to be charged by a public utility corporation shall be irrevocably fixed.

[2] The existence of such a right to establish fixed rates for a definite period depends upon the question whether or not the police power of the state has been delegated to the municipal corporation. Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155. Said the court in Winchester v. Winchester Water Works, 251 U. S. 192, 40 Sup. Ct. 123, 64 L. Ed. 221:

"The governmental power rests with the state, and must be conferred upon the municipality in an unmistakable way."

In Home Telegraph Co. v. Los Angeles, 211 U. S. 265, 273, 29 Sup. Ct. 50, 52 (53 Ed. 176), it was said:

"The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme Legislature (in this case, the Legislature of the state) has the authority to make such a surrender, unless the authority is clearly delegated to it by the supreme Legislature. The general powers of a municipality or of any other political subdivision of the state are not sufficient. * * * It has been settled by this court that the state may authorize one of its municipal corporations to establish by an inviolable contract the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. * * * But for the very reason that such a contract has the effect of extinguishing pro tanto an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power."

After reviewing a number of the prior decisions of the court, including some of the cases which are principally relied upon by the appellant here, the opinion adds:

"All these cases agree that the legislative authority to the municipality to make the contract must clearly and unmistakably appear."

We may follow the conclusion which the court reached in that case, and say that the appellant here has failed to show that in 1908 the city had legislative authority to make a contract fixing rates for a definite period of time, so as to preclude its power to alter the same.

[3] In Session Laws of 1919, p. 160, c. 50, the Territorial Legislature of Alaska authorized common councils of cities to fix and establish rates to be charged for the services of public utility corporations, and added that they might establish "reasonable rates or change the said rates for such services to be charged by any public service associa-

tion, corporation or individual," etc. The provision was clearly intended to refer, not only to franchises thereafter to be granted, but to franchises then in existence. Under that authority the city council of Juneau passed the ordinance which is here complained of. We find no ground for holding that the lower court erred in dismissing the complaint.

The decree is affirmed.