### KENTUCKY POWER & LIGHT CO. v. CITY OF MAYSVILLE et al.

District Court, E. D. Kentucky. November 8, 1929.

Worthington, Browning & Reed, of Maysville, Ky., for plaintiff.

B. S. Grannis, of Flemingsburg, Ky., and J. M. Collins, of Maysville, Ky., for defendants.

DAWSON, District Judge. This case is before me on motion of the defendants to dismiss the bill for want of jurisdiction, and on motion to dismiss the bill for want of equity.

The Maysville Gas Company was organized by an Act of the General Assembly of Kentucky of March 1, 1854 (Loc. & Priv. Acts Ky. 1853–54, c. 370). Section 7 of the Charter provides: "That said company may lay their pipes of every necessary kind, through any of the streets and alleys of said city, and furnish gas light to any person on such terms as the company and such person may agree upon; and such contract shall be obligatory, and may be enforced in any proper court in this Commonwealth. A contract may also be made in the same manner between the City of Maysville, or any corporation therein, and said company, which shall be enforced in the same way."

It will be observed that the original charter authorized the company to furnish gas only for lighting purposes, but by an Act of May 12, 1886 (Loc. & Priv. Acts Ky. 1885–86, c. 1085), the charter was amended so as to authorize the company to furnish and sell natural gas in the city limits for all purposes.

The Citizens' Gas Light Company was created by an Act of the General Assembly of Kentucky of April 19, 1886 (Loc. & Priv. Acts Ky. 1885–86, c. 684), and section 3 of its Charter in part provides as follows: "The business of said company shall be to furnish gas and gas light to the City of Maysville and the Town of Chester, and the citizens and inhabitants thereof, by contract with them, for public and private use, and for this purpose * * * shall have the right to lay down its gas mains and gas pipes, and make the necessary excavations for so doing, through or under any street, or alley, or road, or passway, within the City of Maysville and the Town of Chester, Kentucky."

Under these charters these two companies laid their gas lines and commenced the conduct of their business in the city of Maysville long before the adoption of the present state Constitution, and by amendments and consolidations under the laws of Kentucky they were finally merged in the plaintiff, Kentucky Power & Light Company, which is

now the owner of all their property, franchises, and privileges.

On April 15, 1929, the board of council of the city of Maysville, which is a city of the third class under the laws of Kentucky, enacted an ordinance, sections 1, 2, 3, and 5 of which are as follows:

"Section 1. That it shall be unlawful for any person or corporation to sell and distribute natural gas to domestic consumers in the City of Maysville and to charge for same when so sold and distributed to any domestic consumer in the City of Maysville any sum in excess of Forty (40¢) Cents per one thousand cubic feet."

"Section 2. That this rate shall continue in force and effect from the passage and approval of this ordinance and until Council fixes a different rate or until a rate which is fair and reasonable under all the circumstances shall be fixed by the Kentucky State Railroad Commission."

"Section 3. That the Mayor is now authorized and directed to file with the State Railroad Commission an application for the fixing of a fair and reasonable rate for natural gas to domestic consumers in the City of Maysville."

"Section 5. That any person or corporation breaching any provision of this Ordinance, shall be guilty of a misdemeanor and shall be subject to prosecution in the Police Court of the City of Maysville, and upon conviction shall be subject to a fine of not less than Ten ($10.00) Dollars or more than Fifty ($50.00) Dollars for each offense, or confined in the County Jail not to exceed ten days, and such excessive charge to each consumer shall constitute a separate offense."

It is the enforcement of this ordinance which the plaintiff seeks to enjoin. There is no diversity of citizenship, and the jurisdiction of this court is invoked on the ground that the enforcement of this ordinance violates the rights of the plaintiff, secured to it by the Constitution of the United States. The plaintiff asserts that section 7 of the Charter of the Maysville Gas Company and section 3 of the Charter of the Citizens' Gas Light Company gave to those corporations the right to charge such rates as might be agreed upon between those companies and the citizens or corporations to whom they furnished gas, and that the plaintiff, as successor to the franchises of those two companies, enjoys the same right, and that any attempt on the part of commonwealth, or any subdivision or agency of the commonwealth, to interfere with such right, by regulation of the rates charged, constitutes an impairment of the plaintiff's contract rights, in violation of section 10 of article 1 of the Constitution of the United States. It is also contended that the rate attempted to be fixed in the ordinance of April 15, 1929, is so low as to amount to confiscation, and therefore deprives the plaintiff of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

The further contention is advanced in the bill that the board of council of the city of Maysville is without any authority under the laws of Kentucky to regulate the price at which gas may be sold to consumers within the limits of that city, and that the ordinance is void on that ground, and that its enforcement would deprive the plaintiff of its property without due process of law.

The bill fully makes out a case of equitable jurisdiction, if this court as a federal court has jurisdiction of the subject-matter, and of this I have no doubt. The bill makes out a clear case of federal jurisdiction under both section 10, article 1, of the Federal Constitution and the Fourteenth Amendment to that instrument. Of course, I am aware that section 10 of article 1 and the Fourteenth Amendment are each inhibitions against state action, and it might be suggested that if the city has no power under the laws of Kentucky to regulate rates to be charged by the plaintiff, its action in passing the ordinance complained of cannot be regarded as the action of the state, and is therefore not subject to examination by this court under the sections of the Federal Constitution referred to. This contention, however, is not sound. Of course, the power to regulate rates to be charged by public utilities is a power residing primarily in the state, and no city or subdivision of the state can exercise such power unless it has been authorized so to do by the state. If the state has conferred that power upon cities of the third class, then the ordinance of April 15, 1929, complained of in this case, is an act of the state and may be attacked in the federal court as violative of federal constitutional guaranties. If the city has not been granted such power by the state, it cannot be heard in a proceeding such as this to question the existence of the power. It cannot attempt to exercise a power which it could legally exercise only if authorized so to do by the state, and then, when its action is attacked as violative of federal constitutional provisions, assert that its act in passing the ordinance was without state authority and therefore not the action of the state

See Home Telephone Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510.

There is no merit in the suggestion of the defendants that this court cannot take jurisdiction so long as the question of plaintiff's rates is pending before the State Railroad Commission. A sufficient answer to this suggestion is that the record up to this time does not disclose the pendency of any action before the Railroad Commission involving plaintiff's rates, but it is not necessary to rest the decision of this contention of the defendants upon such a ground. If the plaintiff were seeking to enjoin the action of the Railroad Commission, a different case might be presented; but the plaintiff is not seeking to enjoin any action of the Railroad Commission. It is seeking to enjoin the enforcement of an ordinance of the city of Maysville, undertaking to fix the rates which plaintiff may charge. If third-class cities have the power to regulate gas rates within their limits, then the ordinance may be attacked on the ground that it is violative of section 10 of article 1 and the Fourteenth Amendment to the Federal Constitution. If the city does not have any such power, its attempt to exercise the power amounts to a taking of plaintiff's property without due process of law. See City of Winchester v. Winchester Waterworks Co., 251 U. S. 192, 40 S. Ct. 123, 64 L. Ed. 221.

For these reasons it seems clear to me that the motions to dismiss should each be overruled.

This disposes of all the questions now pending before me, but in the interest of orderly procedure it seems to me appropriate that I should at this time dispose of two questions of law appearing on the face of the bill, which will next inevitably arise. These questions are:

(1) Are the rates of the plaintiff in the city of Maysville forever immune from regulation by virtue of section 7 of the Charter of the Maysville Gas Company and section 3 of the Charter of the Citizens' Gas Light Company?

(2) If not immune from such regulation, does that power of regulation reside in the common council of the city of Maysville or in the Railroad Commission of Kentucky?

These questions will be dealt with in the order stated.

■ The power to regulate rates of public utilities is inherent in every sovereignty. It is legislative in character and is a part of the police power. The state may, within limits, contract with a utility as to the rates to be charged, yet it may well be doubted if, under the modern rule, it can irrevocably surrender all regulatory power. Certainly no such surrender is to be presumed. On the contrary, every presumption is against any such surrender. A charter provision claimed to work such a surrender must not be so construed if any other construction is reasonably possible. Stone v. Farmers' Loan & Trust Co., 116 U. S. 307, 6 S. Ct. 334, 388, 1191, 29 L. Ed. 636; Georgia R. & Banking Co. v. Smith, 128 U. S. 174, 9 S. Ct. 47, 32 L. Ed. 377; Louisville & Nashville R. R. Co. v. Kentucky, 161 U. S. 677, 16 S. Ct. 714, 40 L. Ed. 849.

■ At most, the two charter provisions relied upon in this case simply authorized their recipients to make and enforce contracts for supplying gas to consumers. Inasmuch as these companies were engaged in a business affected with a public interest, the provisions of their charters cannot be construed as giving to them the unrestricted right to charge whatever rate they might choose. Even if their charter should be construed as forever surrendering the power of the state to regulate their rates, their contracts in reference thereto would still be subject to the common-law rule that they could not exact more than a reasonable compensation for the service rendered, and, in case of a controversy as to what constituted a reasonable rate, the courts would have jurisdiction to determine the matter. See Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; Dow v. Beidelman, 125 U. S. 680, 8 S. Ct. 1028, 31 L. Ed. 841.

■ It does not seem to me, however, that the two charter provisions relied upon irresistibly compel the conclusion that it was the intention of the General Assembly to forever surrender the power of the state, by legislative action, to regulate the rates of the two companies referred to, and to leave the question of the reasonableness of such rates to be dealt with by the courts as the occasion might arise. A more reasonable construction is that these two charter provisions conferred upon the two corporations the right to make valid and enforceable contracts as to the rates to be charged, subject always to the rate-regulatory power of the state. Southern Pacific Co. v. Campbell, 230 U. S. 537, 551, 33 S. Ct. 1027, 57 L. Ed. 1610, and cases there cited.

■■ There is still a more potent reason, however, why plaintiff's contention as to its rates under the two charter provisions cannot prevail. As heretofore pointed out, the original charter of the Maysville Gas Com-

pany only gave that company the right to furnish gas *light* in the city of Maysville and make contracts in reference thereto. It was given no authority whatever to furnish gas for any other purpose. While the record is not clear on the matter, I am quite sure that the furnishing of gas light is no part of the present business of the plaintiff. The Maysville Gas Company for the first time was given the right to furnish gas for heating and power purposes by the amendment to its articles of incorporation approved May 12, 1886, and its rights in that respect must date from that time. The charter of the Citizens' Gas Light Company was granted April 19, 1886. Therefore the amendment of the charter of the Maysville Gas Company and the original charter of the Citizens' Gas Light Company were both granted after February 14, 1856 (Pub. Acts Ky. 1855-56, c. 148), on which date there was approved an act of the General Assembly of Kentucky, section 1 of which specifically provided: "That all charters and grants of, or to corporations, or amendments thereof, and all other statutes, shall be subject to amendment or repeal at the will of the Legislature, unless a contrary intent be therein plainly expressed: Provided, that whilst privileges and franchises so granted may be changed or repealed, no amendment or repeal shall impair other rights previously vested."

The quoted provisions of this act were carried over into the General Statutes of 1873 (chapter 68, section 8) and then into the present statute law of Kentucky (section 1987, Kentucky Statutes).

There is nothing in the amended charter of the Maysville Gas Company, approved May 12, 1886, nor in the charter of the Citizens' Gas Light Company, approved April 19, 1886, indicating any intention on the part of the General Assembly to except those instruments from the operation of the Act of February 14, 1856, and of its counterparts found in the General Statutes of 1873 and in section 1887 of the present Statutes of Kentucky. So if they ever had the right to contract with reference to rates, free of the control of the legislative department, that right was held subject to its revocation by the authority which conferred it.

It must be admitted that the General Assembly of Kentucky has provided for the regulation of gas rates in cities of the third class. The parties to this litigation are agreed on that point, but there is disagreement as to whether that power of regulation is vested in the Railroad Commission of Ken-

tucky, under section 201e—1 of Kentucky Statutes, or has been delegated to the common council of cities of the third class in section 3290—5 of Kentucky Statutes. That question will be later discussed; but whether the power be in the city council or in the Railroad Commission, in view of the Act of February 14, 1856, and subsequent similar acts, it supersedes any power which may have been granted in the charters of the two companies referred to to fix their own rates, free of legislative interference.

█ Furthermore, the bill shows that the Maysville Gas Company and the Citizens' Gas Light Company, subsequent to March 1, 1911, were, by consolidation under the laws of Kentucky, merged in the plaintiff, Kentucky Power & Light Company. This was a voluntary act on their part, and by the express provisions of section 556 of Kentucky Statutes they ceased to exist as corporations and the consolidated corporation became a single new corporation, and subject to all the laws of Kentucky relating to such corporations, including those relating to the regulation of their rates which were in force when the new consolidated corporation came into existence. See Dow v. Beidelman, supra; Memphis & Little Rock R. R. Co. v. Railroad Commissioners, 112 U. S. 609, 5 S. Ct. 299, 28 L. Ed. 837.

For all the reasons stated, I conclude that plaintiff's rates are subject to regulation by public authority.

█ This brings us to a consideration of the question of whether this power of regulation is in the city council of Maysville or in the Railroad Commission. This question involves a construction of chapter 61 of the Acts of the General Assembly of 1920, now embodied in section 201e—1 to section 201e—26, both inclusive, of the Kentucky Statutes, Carroll's 1922 Edition, and section 3290, subsections 5 and 16, of Kentucky Statutes, Carroll's 1922 Edition. Chapter 61 of the Acts of 1920 places certain public service corporations under the jurisdiction of the State Railroad Commission and provides for the regulation of their rates, etc. Section 1 of that act, however (Kentucky Statutes, section 201e—1), specifically enumerates the public utilities subject to its provisions. It, in part, provides: "The provisions of this act shall apply to express companies, telephone companies, telegraph companies, natural gas companies and natural gas transportation companies, steamboats and steamboat companies, and all boats and other water craft propelled by the use of oil, gasoline or other means, whether incorporated or unincorpo-

rated and doing business in this state in the transportation of goods for hire or compensation between points in this state, or in receiving or transmission of messages between points in this state, or in the distribution, furnishing or sale of natural gas as a fuel for domestic or industrial purposes, but the provisions of this act shall not embrace the operation of telephone companies within any city where the rates charged for the transmission of messages and other services ·may be regulated by local authority, or the operation of natural gas companies in any city where the rates are now or may be regulated by local authority."

This section undoubtedly means that the Railroad Commission is not given jurisdiction over the rates of natural gas companies in any city where the rates are now regulated by local authority, or where the city under the law has the power of regulation.

By section 3290—5, Kentucky Statutes, the common council of each city of the third class is given the power "to provide the city and the inhabitants with water, light, power, heat and telephone service, by contract, or by works of its own, located either within or beyond the boundaries of the city. To make regulations for the management thereof, and to fix and regulate the prices to private consumers and customers." And section 3290—16 authorizes the common council "to make all police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public; and to define, declare, prevent, suppress and remove nuisances either within the city or within one mile thereof."

A consideration of these two subdivisions of section 3290 leads me to the conclusion that the General Assembly has conferred upon cities of the third class the power to regulate the rates to be charged by gas companies within their limits. If I am correct in this, then the rates of the plaintiff in this case may be regulated by the defendant city, and therefore plaintiff is clearly within the exception contained in section 201e—1, and the Railroad Commission has no jurisdiction over such rates.

The result of my conclusions on these matters leaves to be litigated in this case only the question of whether the rate fixed by the common council in the ordinance of April 15, 1929, is confiscatory, and the case will proceed accordingly.

An order will be entered overruling each of the motions to dismiss, and defendants' exceptions noted.